# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2006-CA-01875-SCT

*JOHNNY L. DUPREE, IN HIS OFFICIAL
CAPACITY AS MAYOR OF THE CITY OF
HATTIESBURG, MISSISSIPPI*

*v.*

*CARTER CARROLL, C. E. BAILEY AND KIM
BRADLEY*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/29/2006 |
| TRIAL JUDGE: | HON. ROBERT B. HELFRICH |
| COURT FROM WHICH APPEALED: | FORREST COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | CHARLES E. LAWRENCE, JR. |
| ATTORNEYS FOR APPELLEE: | S. WAYNE EASTERLING |
| | FRANK D. MONTAGUE, JR. |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 10/25/2007 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE DIAZ, P.J., CARLSON AND RANDOLPH, JJ.**

**DIAZ, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    This case asks whether members of a city council have standing to seek a writ of

mandamus against the mayor of their city.  It also addresses whether a mayor must resubmit

directors for approval by the council at the beginning of a new term of office.  Finding in the

affirmative as to both issues, we affirm the circuit court's order of mandamus.

**Facts and Proceedings Below**

¶2.     The facts are undisputed.  The City of Hattiesburg has a "mayor-council form of government" adopted under Mississippi Code Section 21-8-1, et seq. (Rev. 2007). The city has five wards and five city council persons who act as the legislative branch of government. Miss. Code Ann. § 21-8-9 (Rev. 2007).

¶3.     Johnny DuPree is the mayor of Hattiesburg, and at the time this suit was filed, all three adverse parties—Carter Carroll, C.E. Bailey, and Kim Bradley—were councilpersons in the city.  In 2001, DuPree became mayor and nominated department directors pursuant to statute. *See* Miss. Code Ann. § 21-8-23 (2) (Rev. 2007).  The council approved the directors. Then, DuPree was re-elected and began a second term in 2005.

¶4.     At that time, the mayor indicated he was not going to resubmit the department directors for approval to the council.  The council demanded he do so.  DuPree refused, and the three named council members sought a writ of mandamus to compel him to comply with what they perceived the law required.[1]  The Circuit Court of Forrest County agreed with the council members, and issued the writ demanding that the mayor resubmit the department heads for approval.

¶5.     Aggrieved, the mayor appeals.  We are presented with only two questions. First, do the councilpersons have the necessary statutory standing to seek a writ of mandamus?  If they do, does state statute require a mayor to resubmit a choice of department directors for approval at the beginning of a new term of office, even if those directors are holdovers from the previous term?

---

[1] The action was not a formal act of the Hattiesburg City Council.

¶6.    We will review these questions of law de novo. *See Aldridge v. West*, 929 So. 2d 298, 300 (Miss. 2006).

### I. Do the plaintiffs have standing to seek a writ of mandamus?

¶7.    The named council members sought a writ of mandamus to compel the mayor to resubmit the directors. The writ of mandamus exists to force an elected official to perform a duty of office. State statute authorizes the writ, which can only be issued:

> On the complaint of the state, by its Attorney General or a district attorney, in any matter affecting the public interest, or on the complaint of any private person who is interested, the judgment shall be issued by the circuit court, commanding any inferior tribunal, corporation, board, officer, or person to do or not to do an act the performance or omission of which the law specially enjoins as a duty resulting from an office, trust, or station, where there is not a plain, adequate, and speedy remedy in the ordinary course of law. All procedural aspects of this action shall be governed by the Mississippi Rules of Civil Procedure.

Miss. Code Ann. § 11-41-1 (Rev. 2002). Our precedent has developed a four-part test to determine who may seek mandamus. To obtain relief, we have previously stated that "it must affirmatively appear that four essential elements are present: (1) the petition must be brought by the officers or persons authorized to bring the suit; (2) there must appear a clear right in petitioner to the relief sought; (3) there must exist a legal duty on the part of the defendant to do the thing which the petitioner seeks to compel; and (4) there must be an absence of another remedy at law." *Aldridge*, 929 So. 2d at 302 (citation omitted).

¶8.    Part one of the test addresses whether the person seeking the writ is authorized; per statute, an authorized person may be the Attorney General, a district attorney, or "any private person who is interested." The council members concede they must proceed under the "any private person who is interested" portion of the statute.

3

¶9.     Part two of the test requires that one seeking a writ be "authorized to bring the suit." A private person may only be authorized to "petition for a writ of mandamus 'if he can show an interest separate from or in excess of that of the general public.'" *Aldridge*, 929 So. 2d at 302 (quoting *Jackson County Sch. Bd. v. Osborn*, 605 So. 2d 731, 734 (Miss. 1992)); *Fondren v. State Tax Comm'n*, 350 So. 2d 1329, 1332 (Miss. 1977)).  The crux of our analysis today is whether the council members have a separate interest or one in excess of the general public.

¶10.    The council members offer that their interest in pursuing the writ is unique from that of the public at large because of the role they play within the separation of powers.  The statutory scheme authorizing the mayor-council system expressly gifts that legislative body with strong checks and balances on the executive power of the mayor.  While only the mayor may nominate department directors, it is only through the assent of the council that they may become directors.  Miss. Code Ann. § 21-8-23 (2) (Rev. 2007).  The council members argue that they are prevented from exercising their legislative power as authorized by the Legislature, which vests in them an interest separate from, and in excess of, the general public.  The trial court agreed with this argument, and held that "[a]s members of the City Council, [the plaintiffs] have the right and duty to confirm directors appointed by the Mayor," determining that this distinction sufficed as an interest separate from or in excess of the general public.

¶11.    By analogy, the council members offer the case of *Dye v. State ex rel. Hale*, 507 So. 2d 332, 338 (Miss. 1987), where two state senators alleged the lieutenant governor was exercising legislative powers in violation of the Constitution of 1890.  We found that the

4

actions of the lieutenant governor "certainly ha[d] an adverse impact upon [the state senators] sufficient to confer upon them standing to sue," and "[w]e refuse[d] to relegate to the Attorney General either the exclusive authority to bring a suit such as this or the discretion whether and how that authority should be exercised." *Id.* at 338.

¶12.    The mayor counters that the state senators in *Dye* did not file a writ of mandamus, as the council members did in this case. Yet while the *Dye* petition was not filed as a writ of mandamus, it certainly shared some characteristics with that statutory right. The state senators sought to enjoin the lieutenant governor from exercising authority the senators argued was unconstitutional as a violation of separation of powers; they also sought a declaratory judgment that the Senate Rules, as written, conferred an unconstitutional grant of power. *Id.* at 335-36. This is certainly similar to seeking a writ of mandamus to "command[] any . . . officer . . . to do or not to do an act the performance or omission of which the law specially enjoins as a duty resulting from an office, trust, or station" under the mandamus statute. Miss. Code Ann. § 11-41-1 (Rev. 2002). Additionally, there is no doubt that the question at hand was whether the mayor had encroached upon the powers expressly granted to the council by the Legislature.

¶13.    The mayor asserts in response that one cannot be a public official and claim that a duty arising out of one's elected position confers standing for a writ of mandamus. He argues that "[i]f you have a duty as a result of your elected position and it affects a matter of public interest, then [the mandamus statute] requires that a petition for a writ of mandamus be brought on complaint by the state." Yet the statute does not set out such a requirement; nor does the mayor cite any case law in support of such an interpretation of the statute.

5

¶14. The third factor, whether there is a duty, is to an extent addressed in the second section of this opinion. However, it is undisputed by the parties that the mayor did have a duty to nominate, and the council a duty to approve or disapprove, directors of municipal departments. It was also undisputed by the parties that there was no other legal remedy available, meeting the fourth prong of the test.

¶15. The council members have demonstrated that, by virtue of their position as the legislative check and balance on the executive power of the mayor, they have a separate interest or an interest in excess of the general public. Accordingly, they have also demonstrated they have the standing necessary to seek a writ of mandamus.

**II. Does state statute require the mayor to resubmit his directors once he is re-elected?**

¶16. State law governing the mayor-council system requires that the mayor nominate the directors of the city departments; the nominated directors may only serve if approved by the council. Miss. Code Ann. § 21-8-23 (2) (Rev. 2007). The statute also provides that "[e]ach director shall serve during the term of office of the mayor appointing him, and until the appointment and qualification of his successor." Miss. Code Ann. § 21-8-23 (2) (Rev. 2007). The parties do not dispute that a mayor cannot unilaterally hire directors without the approval of the council. The question presented today is whether a mayor must resubmit directors who have been previously approved at the beginning of a new term of office.

¶17. "Where the statute is plain and unambiguous there is no room for construction." *Bailey v. Al-Mefty*, 807 So. 2d 1203, 1206 (Miss. 2001) (internal quotation and citation omitted). Further, "[t]he primary rule of construction is to ascertain the intent of the

6

legislature from the statute as a whole and from the language used therein," and we "may look not only to the language used but also to its historical background, its subject matter, and the purposes and objects to be accomplished." *Id.* at 1206 (internal quotation and citation omitted).

¶18.     In his appeal, the mayor urges that "the statute itself is silent" when directors should be presented to the council for approval, "regardless of whether it is during a first term or successive term of office." While the statute may not be explicit, it is not silent.

¶19.     The statute clearly vests in the council checks and balances on the executive powers of the mayor. A plain reading of the statute supports the conclusion that "the term of office" is to be read in the singular, meaning that a director, once confirmed, serves only for the term of the mayor nominating him. As the trial court reasoned, the mayor and the council members each serve four-year terms. *See* Miss. Code Ann. § 21-8-7 (2) (Rev. 2007). Accordingly, the council members who originally confirmed the nomination of a director may no longer be on the council at the beginning of the new term. As discussed *supra*, the checks and balances on executive power vested in each council member are unique and separate abilities not shared by members of the general public. An interpretation which allowed those council members who were present when a mayor first took office to have greater powers than those council members present at the beginning of the new term of office would subvert the statutory scheme.

¶20.     Additionally, it is not uncommon for mayors to serve multiple terms, and in some extreme cases, remain in office for decades. The council, as a legislative body, would be stripped of valuable checks and balances that preserve the separation of powers if a mayor

7

could simply shield his or her decisions with political longevity. A contrary construction of the statute where the simple re-election of a mayor would nullify the checks and balances on executive power expressly created by the Legislature would disregard the clear intention of that body. We shall not disregard the clear intent of the Legislature to create these checks and balances.[2]

¶21.    This result has previously been reached by the Attorney General in multiple written opinions on the subject, including one involving the parties and facts at hand, and dating back to at least 1994. The opinions state "that department directors are appointed for a term commensurate and coterminous with the term of the appointing mayor" and opine that a re-elected mayor must resubmit holdover directors. Miss. Atty. Gen. Op. Opinion No. 2006-0058, 2006 WL 1900672, *1 (Feb. 24, 2006). While an attorney general's opinion is not binding on this Court, it is persuasive, and it further underscores our analysis. *See State ex rel. Holmes v. Griffin*, 667 So. 2d 1319, 1326 (Miss.1995).

¶22.    Accordingly, a mayor shall resubmit directors for approval by the council if the mayor is re-elected, even if the director is a holdover from the previous term.

**Conclusion**

¶23.    The council members have standing to seek a writ of mandamus against the mayor by virtue of the fact that their position creates in them a separate interest or an interest in excess of the general public. Additionally, Mississippi Code Section 21-8-23 (2) requires that a

---

[2]On appeal, the mayor offered the analogy of appointment of department heads to the President's unilateral appointment of cabinet members. *See* U.S. Const. Art. II, § 2. Unlike that constitutional grant of power to the President, the powers of a mayor and a city council are derived wholly from enactments of the Legislature.

mayor must resubmit directors for approval by the council at the beginning of the new term of office, even if the director is a holdover from the previous term and has been previously approved by the council.

¶24. The judgment of the Forrest County Circuit issuing an order of mandamus to compel the Mayor of Hattiesburg to resubmit directors to the city council is affirmed. The mayor shall forthwith submit department heads for approval by the council.

¶25. **AFFIRMED.**

**SMITH, C.J., WALLER, P.J., CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY.**