KITCHENS, Justice,
concurring in part and dissenting in part:
¶ 53. Because I would affirm the trial court’s denial of summary judgment in toto, I respectfully concur in part and dissent in part. First, I must disagree that David Bozeman’s claims in the prior McBride action are barred by the statute of limitations. Because the action brought by Ruby Kelley encompassed Bozeman’s previous claims, the saving statute preserved those so-called “survival-type” claims. I also would affirm the trial court’s finding that Ruby Kelley had standing to bring this wrongful death action as the decedent’s personal representative, and I would further affirm the trial court’s finding that she is an interested party without regard to whether she is the decedent’s widow pursuant to Alabama law.

(1) Whether the “survival-type” claims are time-bamd.

¶ 54. The majority finds that the present suit is new and independent of David Bozeman’s claim in McBride, and therefore, the saving statute would not serve to toll the statute of limitations on these claims, despite this Court’s prior announcement to the contrary in Canadian National v. Smith, 926 So.2d 839 (Miss.2006). The majority reaches this conclusion by reasoning that “Kelly had not yet been appointed Bozeman’s executrix when she filed suit, and she was not substituted as the party plaintiff in Bozeman’s McBride claim after Bozeman died but before McBride was dismissed.” Maj. Op. at ¶ 45. This reasoning is flawed and contradicts established law.
¶ 55. Recently, in Harris v. Darby, 17 So.3d 1076 (Miss.2009), this Court reiterated that, because a survival claim is not extinguished at death pursuant to Mississippi Code Section 91-7-237,[18] Mississippi Rule of Civil Procedure 25(a)(1) contemplates dismissal only upon notice to the court of the party’s death and only if, after death is suggested on the record, substitution is not made within ninety days.[19] There is no indication that the court in McBride was provided notice of Bozeman’s death prior to the dismissal as to form. Thus, the claim was not extinguished.
*165 ¶ 56. In Harris, the plaintiff filed a claim asserting medical malpractice against the defendants, individually and on behalf of her mother. Id. at 1076. The mother died during the pendency of the action, and the daughter was not appointed as the executrix of her mother’s estate until seventeen months after the mother’s death. Id. at 1077. After the decedent’s daughter received her appointment as executrix, she filed a Rule 25 motion to substitute. Id. The defendants then moved to dismiss the case, arguing that the motion to substitute was untimely because it was filed after the one-year period contemplated by the saving statute at Mississippi Code Section 15-1-69. Id. The trial court agreed with the defendants and dismissed the case, finding that the death of the mother triggered the saving statute. Id. at 1078.
¶ 57. On appeal, this Court reversed, holding that, because the case had not been dismissed prior to the Rule 25 motion for substitution, the saving statute was not triggered and dismissal was not warranted. Id. The Court concluded:
The savings statute was designed as remedial legislation intended to protect the good-faith efforts of plaintiffs who make a simple mistake. The statute was not designed to penalize plaintiffs and bar the continuation of an ongoing suit. The drafters of this law surely did not intend that a suit aiitomatically abate or be dismissed upon the death of a party.
Id. at 1081 (emphasis added).
¶ 58. Harris clearly applies here, and Bozeman’s claims in McBride were not extinguished for failure to substitute the estate. The saving statute, therefore, was not triggered until the McBride case- was dismissed without prejudice, and those claims were properly and timely resurrected via Kelley’s wrongful death action. The fact that Kelley’s claims included damages relating to Bozeman’s death does not destroy the identity of this action with the prior action in McBride, because a wrongful death suit subsumes those claims that could have been brought under the survival statute. Burley v. Douglas, 26 So.3d 1013, 1019 n. 6 (Miss.2009) (“When the same wrongful conduct causes both personal injury and death, at the instant of death, the recovery for the personal injury is embraced by the ‘one suit’ for wrongful death and is not actionable by the estate under the survival statute.’’) (quoting In re Estate of England, 846 So.2d 1060, 1068 (Miss.Ct.App.2003)).

(2) Whether Ruby Kelley was the personal representative of the decedent when she filed the complaint in this action.

¶ 59. It is not disputed that the decedent named Ruby Kelley as his executrix in his will, or that she was approved as his executrix on August 7, 2007, by the Probate Court of Choctaw County, Alabama. No one disputes that Kelley currently serves as the decedent’s executrix, or that she will inherit the entire estate, save and except a pickup truck, which was bequeathed to one of the decedent’s sons. Thus, Kelley is the personal representative of the decedent’s estate. Hill v. James, 252 Miss. 501, 175 So.2d 176, 179 (1965). Her status as such came to fruition upon the decedent’s death, subject only to approval of the appropriate court, which was granted in due course. The question, then, is whether this Court is willing to decide that a named executrix is not a decedent’s personal representative within the meaning of the wrongful death statute, unless and until the testator’s appointment has been ratified by a court of competent jurisdiction, a question that, until now, has *166 never been squarely addressed or answered by this Court.
¶ 60. The majority holds that Kelley— the decedent’s chosen executrix — was not the decedent’s personal representative when she filed the complaint in this action because her appointment had not been judicially blessed. To support its holding, the majority incorrectly cites Long v. McKinney, 897 So.2d 160, 174 (Miss.2004), for the proposition that there must be a formal appointment prior to a plaintiffs becoming the personal representative of an estate for litigation purposes. Maj. Op. at ¶ 17. Long addressed different aspects of wrongful death litigation than those now before the Court. Although the Long decision meticulously analyzed the issue of standing as it applies to multiple wrongful death beneficiaries, it is not dispositive of the question presented in the case at bar. While the Long Court observed that the estate must be opened and administered in the chancery court, it does not so much as imply that admitting the will to probate is a condition precedent to filing suit. The Court in fact stated:
There is no general requirement under law that the personal representative obtain chancery approval to pursue the claims of the estate in the litigation. Nor is there a general requirement that counsel representing the personal representative and the estate in the litigation obtain prior chancery approval of such representation or the agreement for compensation of counsel. However, obtaining such prior approval is a widely accepted and wise practice. Such prior approval will, in most instances, avoid difficulty when the chancellor is approached for an order approving the accountings and the final distribution of estate proceeds, where such payments include compensation to counsel.
Long, 897 So.2d at 174-75. Whatever may be the prudential value of obtaining a chancellor’s approval with respect to the administration of the claim as an asset of the estate, it should not be considered supportive of the erroneous notion that the estate does not exist until it is admitted to probate. Clearly, the Long case, which requires that the estate, at some point, be opened, does not require that a person be formally appointed as executor, executrix, administrator, or administratrix prior to his or her filing a complaint on behalf of the estate. Id. at 174-75.
¶ 61. Consistent with our established precedent, Ruby Kelley became David T. Bozeman’s personal representative when Bozeman died and left a will in which he had named Kelley as his executrix. “Am executor derives his authority from the will,” and “his interest is completely vested at the testator’s death.” Ricks v. Johnson, 134 Miss. 676, 99 So. 142, 146 (1924).
¶ 62. The majority, attempting to limit the effectiveness of Bozeman’s having named Kelley as executrix, cites the statute requiring an oath and bond from the executor as premise for its conclusion that the decedent’s estate does not exist until probate proceedings have begun. Maj. Op. at ¶ 19. It also cites a section regarding the effectiveness of wills as documents of title in Robert A. Weems’s Wills and Administration of Estates in Mississippi for the same proposition. Maj. Op. at ¶ 19. These statements do not have any relevance to the question of who has standing to file suit as a personal representative of a decedent. A person has an estate of one sort or another from birth; the probate estate is the whole of a person’s interest in property that is subject to administration at the time of his or her death.[20] The *167 fundamental purpose of admitting a will to probate is so that the intent of the testator may properly be ascertained. Matter of Last Will and Testament of Lawson v. Lambert, 792 So.2d 977, 979 (Miss.2001). It is a long-standing principle, for example, that unless the intent of the testator is otherwise, devises under a will vest immer diately upon the death of the testator. Dailey v. Houston, 246 Miss. 667, 680, 151 So.2d 919, 925 (1963). The will itself is effective from the time of the death of the testator. Lee v. Foley, 224 Miss. 684, 80 So.2d 765, 767 (1955). Judicial administration of an oath to a personal representative in accordance with Mississippi Code Section 91-7-41 (Rev.2004) does not create the office; rather, it formally binds the representative to his or her solemn duties. It is self-evident that the purpose of admitting a will to probate is not the creation of an estate, but rather its orderly administration so that the estate may ultimately be closed after its assets have been distributed. The implication of the majority’s reasoning is that the property interests held by a testator at the time of death properly belong to nobody and exist, if at all, in limbo, until the will has been admitted to probate.
¶ 63. While it may have been preferable for Kelley to have received judicial ratification of Bozeman’s testamentary appointment before filing the wrongful death action, such was not required. Her failure to jump through that procedural hoop should not deprive Bozeman’s estate or his statutory wrongful death beneficiaries of the right to pursue the claims that Kelley asserted for them.

(3) Whether Kelley has standing as an interested party.

¶ 64. The new rule this Court crafts in the majority opinion is that a person must have a legal relationship with the decedent, such that he or she suffers a “remedial injury (i.e., the invasion of a legally protected interest) by the wrongful deprivation of the decedent’s life at the decedent’s hands.” Maj. Op. at ¶ 38 (emphasis in original). The majority opinion then concludes that Ruby Kelley has standing as an interested party under the wrongful death statute, Mississippi Code Section 11-7-13, only if a finder of fact determines that she is the decedent’s widow and not his friend.
¶ 65. Such a restrictive definition of the broadly encompassing term interested parties requires a high degree of judicial creativity. Given the protracted duration and apparent closeness of the relationship between Ruby Kelley and David Bozeman that this record reveals, a great stretch of the imagination is necessary for a conclusion that Kelley would not have been interested in all things concerning the life and death of this man with whom she had spent a significant portion of her life, so much so that he had named her to act as his personal representative after his death. Given the facts before us, even if we assume for the sake of argument that she is not the decedent’s spouse, how is it possi *168 ble for us to divine that she is not an interested party?
¶ 66. After creating a specific list of persons it authorized to initiate wrongful death actions, the legislature moved to a much more general, catch-all category of authorized parties by providing that such actions could be filed by interested, parties. There is no requirement that such a party even be a human being. If an insurance company with subrogation rights can qualify as an interested party with sufficient standing to bring a wrongful death suit (as the majority acknowledges), surely a person with longstanding personal ties to a decedent such as Ruby Kelley had to David Bozeman meets any ordinary and reasonable definition of interested party, without regard to whether she had a pecuniary interest in the outcome of the wrongful death litigation. Maj. Op. at ¶ 36 (quoting Cleveland v. Mann, 942 So.2d 108, 118 (Miss.2006)).
¶ 67. By having named her as his executrix, David Bozeman died with the understanding that he had entrusted Ruby Kelley with the responsibility of handling his post-mortem affairs. Even though he had living blood relatives, Bozeman designated Ruby Kelley as his personal representative. This alone is more than sufficient to make her a party interested in seeing that a wrongful death action was timely filed on behalf of Bozeman’s statutory beneficiaries, without regard to whether she ultimately would be determined to be numbered among them. She certainly should not be required to prove to a finder of fact that she and Bozeman held themselves out as husband and wife to establish her standing as an interested party.
¶ 68. She did file such an action in time to protect the beneficiaries’ rights under the applicable Mississippi statute of limitations, without waiting for an Alabama probate court to ratify Bozeman’s selection of her as his executrix (which the Alabama court eventually did). The point is, of course, that Kelley’s knowledge, at the time she filed the wrongful death suit in Mississippi, that she had been chosen by Bozeman as his executrix was more than enough to have made her a very interested party. Furthermore, as Justice Dickinson correctly notes, the majority here is in error for distinguishing between an heir at law and a devisee under a will for purposes of defining “interested parties.” There is no reason for us to rule that whether she is an interested party should be left to a trier of fact.[21]
¶ 69. I regret the conclusion of my respected colleagues in the majority that one must have a financial stake in litigation in order to file suit on behalf of those who do. Surely our legislature, in authorizing interested parties to bring such matters into our courts, did so with the knowledge that the hope of financial gain is not the only thing that can motivate people to be interested in acting for the benefit of others.
DICKINSON, P.J., AND CHANDLER, J., JOIN THIS OPINION IN PART.

. '.'When either of the parties to any personal action shall die before final judgment, the executor or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator.” Miss. Code § 91-7-237 (Rev.2004).

. Mississippi Rule of Civil Procedure 25(a)(1) provides:
If a party dies and the claim is not thereby extinguished, the court shall, upon motion, order substitution of the proper parties. The motion for substitution may be made by any party or by the successors or representatives of the deceased party and, together with the notice of hearing, shall be served on the parties as provided in Rule 5 and upon persons not parties in the manner provided in Rule 4 for the service of summons. The action shall be dismissed without prejudice as to the deceased party if the motion for substitution is not made within ninety days after the death is suggested upon the record by service of a statement of the fact of the death as herein provided for the service of the motion.

. Black’s Law Dictionary defines "estate" as: "1. The amount, degree, nature, and qual *167 ity of a person’s interest in land or other property; esp., a real-estate interest that may become possessory, the ownership being measured in terms of duration. 2. All that a person or entity owns, including both real and personal property. 3. The property that one leaves after death; the collective assets and liabilities of a dead person. 4. A tract of land, esp. one affected by an easement.” Blacks’ Law Dictionary 586-89 (8th ed.2004). "Probate estate” is defined as "a decedent’s property subject to administration by a personal representative.” Id. at 1239.
Moreover, the Internal Revenue Code defines the decedents’ gross estate as whatever property interests the decedent holds at the time of his or her death. 26 U.S.C.2031(a) (2001).

. I cannot agree with the majority's holding that the question of whether Ruby Kelley has standing should be made by a jury upon remand for trial. Questions of justiciability, such as standing, are threshold issues of law that are within the purview of the judge, not the jury. See e.g., Bennett v. Board of Supervisors of Pearl River County, 987 So.2d 984, 986 (Miss.2008) (holding that standing is a question of law) (citing DuPree v. Carroll, 967 So.2d 27, 28 (Miss.2007)).