# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2019-CA-00917-SCT

*MISSISSIPPI DEPARTMENT OF REVENUE*

*v.*

*SBC TELECOM, INC., BELLSOUTH MOBILE DATA, INC., BELLSOUTH CORPORATION, NEW CINGULAR WIRELESS SERVICES, INC., NEW BELLSOUTH CINGULAR HOLDINGS, INC., BELLSOUTH TELECOMMUNICATIONS, LLC, CENTENNIAL COMMUNICATIONS CORP. AND SBC ALLOY HOLDINGS, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 05/07/2019 |
| TRIAL JUDGE: | HON. TIFFANY PIAZZA GROVE |
| TRIAL COURT ATTORNEYS: | JOHN F. FLETCHER |
| | BRIDGETTE T. THOMAS |
| | JOHN S. STRINGER |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEYS FOR APPELLANT: | BRIDGETTE T. THOMAS |
| | JOHN S. STRINGER |
| ATTORNEY FOR APPELLEES: | JOHN F. FLETCHER |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| DISPOSITION: | AFFIRMED - 08/13/2020 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE KITCHENS, P.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1.     This appeal arises out of differing interpretations of Mississippi Code Section 57-87-5 (Rev. 2014) by the Mississippi Department of Revenue (MDR) and several taxpaying entities of an affiliated group (the Taxpayers).  At issue is the computation of the broadband credit

limits that a taxpayer may use against its franchise-tax and income-tax liabilities.

¶2. The taxpayers here each filed a separate franchise-tax return and were included as affiliated group members in the combined corporate income-tax return filed on behalf of the affiliated group. For the purpose of the broadband credits, the MDR argues that the income-tax liability of a taxpayer that is included in a combined corporate income-tax return filed on behalf of the affiliated group is only the amount that the MDR would theoretically be entitled to recover from that taxpayer according to the taxpayer's reported taxable income as reported in the combined return. The taxpayers argue that each taxpayer is jointly and severally liable for the total combined income-tax liability of the affiliated group, therefore making the income-tax liability of each taxpayer the same as the total combined income-tax liability of the affiliated group.

¶3. The chancellor granted summary judgment in favor of the taxpayers and ruled that the taxpayer's tax liabilities under Chapters 7 and 13 of Title 27[1] of the Mississippi Code was the aggregate of the taxpayer's separate franchise-tax liability and the total combined income-tax liability of the affiliated group. The MDR appeals.

**FACTS AND PROCEDURAL HISTORY**

¶4. During the tax periods at issue, AT&T Mobility II, LLC, and BellSouth Telecommunications operated telecommunications enterprises and made significant investments in broadband technology developments throughout Mississippi, generating

---

[1]Chapter 7 of Title 27 of the Mississippi Code is the Income Tax and Withholding Chapter, and Chapter 13 of Title 27 of the Mississippi Code is the Corporate Franchise Tax Chapter.

Broadband Investment Credits (Broadband Credits) under Mississippi Code Section 57-87-5. BellSouth Mobile Data, SBC Alloy Holdings, New BellSouth Cannular Holdings, New Cingular Wireless Services, SBC Telecom, and Centennial were all direct or indirect corporate owners of AT&T Mobility II.

¶5. For the 2010 tax year, each taxpayer filed separate franchise-tax returns and each taxpayer was included in the Mississippi combined corporate income-tax return filed on behalf of SBC Alloy Holdings, Inc. & Affiliates under Mississippi Code Section 27-7-37 (Rev. 2017). Section 27-7-37 permits members of an affiliated group to file one combined corporate income-tax return and makes each member jointly and severally liable for the entire about of the income-tax liability.

¶6. On or about September 15, 2014, each taxpayer amended its 2010 franchise-tax return to utilize additional broadband credits and claim a franchise-tax refund. On December 31, 2014, the Mississippi Department of Revenue denied New BellSouth Cingular Holdings' refund claim. The other taxpayers' refund claims were never formally denied but were deemed denied upon the taxpayers' filing an appeal with the MDR's Board of Review.

¶7. For the 2013 tax year, the taxpayers again each filed separate franchise-tax returns and each taxpayer was included in the combined Mississippi corporate income-tax return filed on behalf of BellSouth Corporation, Inc. & Affiliates. The taxpayers used the same methodology to compute their allowable broadband credits in their 2013 returns as they had used in their amended 2010 returns. The MDR determined that the broadband credits the taxpayers had claimed had been improperly applied to an amount greater than the credit cap

of 50 percent of the taxpayers' tax liabilities according to Mississippi Code Section 57-87-5(3) (Rev. 2014). The MDR disallowed portions of the broadband credits claimed by the taxpayers and assessed additional franchise taxes, interest and penalties to the taxpayers separately on several dates between December 22, 2014, and May 20, 2015.

¶8. The taxpayers appealed the MDR's refund denials and assessments to the MDR's Board of Review under Mississippi Code Section 27-77-5 (Rev. 2017). The Board of Review conducted a consolidated administrative-appeals hearing on or about June 30, 2015, and issued its order upholding the MDR's refund denials and assessments in full on December 29, 2015. The order of the Board of Tax Appeals (BTA) noted that the Board of Review found that in both the taxpayers' 2013 returns and their amended 2010 returns that

> the taxpayer had calculated a broadband credit cap that allowed it to zero out the franchise tax liability of several entities in the combined group filing in Mississippi. In doing so, the taxpayer shifted broadband credits from franchise taxpayers that generated the credit to other franchise taxpayers that did not generate the credit. The Board [of Review] found that this was impermissible, as the statute would cap the allowable credits available for franchise tax purposes at 50% of the franchise tax liability, per year, for each entity that is subject to the franchise tax and actually generates broadband credits in Mississippi. The income tax cap on allowable broadband credits would be 50% of the corporate income tax liability of the combined group filing in Mississippi.

¶9. The taxpayers appealed each of the Board of Review's orders to the BTA and requested an administrative appeals hearing under Mississippi Code Section 27-77-5. The BTA conducted a consolidated administrative-appeals hearing on or about August 16, 2016. On appeal before the BTA were two issues: the allocation issue and the credit-computation issue.

4

¶10. On the allocation issue, the taxpayers claimed that each affiliated member/taxpayer was permitted to allocate up to the full amount of allowable credits against its income- or franchise-tax liability, even if that allocation eliminated the full amount of the liability to which it was allocated. In its answer, the MDR admitted agreeing at the BTA hearing that the credits "could be used against the franchise or income tax liability of the taxpayer, but that such utilization was limited to [50 percent] of the *aggregate* of the taxpayer's franchise and income tax liabilities." (Emphasis added.) Later, at the hearing before the chancery court hearing, the MDR stated that historically, the 50-percent limitation had traditionally been allocated by applying half of the credits toward the taxpayers' franchise-tax liability and half to the taxpayers' income-tax liability.

¶11. On the credit-computation issue, the taxpayers claimed that when computing the maximum amount of credit allowable for each taxpayer, each company should add together its separate company franchise-tax liability and the entire combined group's income-tax liability due to the joint and several nature of that income-tax liability in accordance with this Court's decision in *Mississippi Department of Revenue v. Isle of Capri Casinos, Inc.*, 131 So. 3d 1192 (Miss. 2014).

¶12. On September 20, 2016, the BTA issued its order granting the taxpayers partial relief but not the full relief they had requested. The BTA's order granted the taxpayers' requested relief with respect to the issue of allocation and determined that the taxpayers were permitted to claim the allowable broadband credits against either income tax or franchise tax as they determine most beneficial. The BTA's order rejected the taxpayers' argument on the credit-

5

computation issue and upheld the MDR's denials of refunds and assessments of additional taxes, interest and penalties. The BTA remanded the matter back to the Board of Review and directed the Board of Review to give the taxpayers the opportunity to direct where the allowable credits are to be claimed in the revised assessments.

¶13. Aggrieved by the BTA's order, the taxpayers filed their petition for appeal with the chancery court on November 17, 2016, under Mississippi Code Section 27-77-7 (Rev. 2017) (held unconstitutional in part by *HWCC-Tunica, Inc. v. Miss. Dep't of Revenue*, 296 So. 3d 668 (Miss. 2020). The MDR filed its answer and defenses on December 22, 2016. The next year, on November 17, 2017, the MDR moved for summary judgment. The taxpayers filed a cross-motion for summary judgment on December 12, 2017. The chancery court conducted a hearing on both parties' motions for summary judgment on September 26, 2018, and the chancery court entered its final order granting summary judgment in favor of the taxpayers on May 7, 2019.

¶14. Aggrieved, the MDR timely filed its appeal in this Court on June 5, 2019.

¶15. On appeal, the MDR raises only one assignment of error: whether the chancellor's interpretation of Mississippi Code Section 57-87-5(3) was erroneous. The taxpayers assert an additional assignment of error: that the chancery court lacked jurisdiction to hear the appeal because the MDR failed to satisfy the prerequisites of the preamendment version of Mississippi Code Section 27-77-7(4) (Rev. 2010) and further argue that due to MDR's failure, the chancery court was required to dismiss the MDR's answer and defenses and to enter judgment granting the taxpayers all relief requested.

6

¶16.    "[I]ssues involving the chancery court's jurisdiction to hear a particular matter are questions of law which require the Court to apply a de novo standard of review." ***Edwards v. Zyla***, 207 So. 3d 1232, 1235 (Miss. 2016) (citing ***In re Guardianship of Z.J.***, 804 So. 2d 1009, 1011 (Miss. 2002)).

¶17.    "[T]his Court employs a *de novo* standard of review" when reviewing a lower court's "grant or denial of [a motion for] summary judgment." ***Waltman v. Eng'g Plus, Inc.***, 264 So. 3d 758, 760 (Miss. 2019) (citing ***Bullock v. Life Ins. Co. of Miss.***, 872 So. 2d 658, 660 (Miss. 2004)).    When considering an interpretation of a statute, this Court affords no deference to the agency's interpretation of the statute. ***King v. Miss. Military Dep't***, 245 So. 3d 404, 408 (Miss. 2018).    "For statutory interpretation, the initial inquiry is whether the statute at issue is ambiguous." ***Vicksburg Healthcare, LLC v. Miss. Dep't of Health***, 292 So. 3d 223, 226 (Miss. 2020) (internal quotation marks omitted) (quoting ***Hall v. State***, 241 So. 3d 629, 631 (Miss. 2018)).    "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." ***Id.***    (internal quotation marks omitted) (quoting ***Hall***, 241 So. 3d at 651).    "[I]f a statute is ambiguous or silent on a specific issue, statutory interpretation is appropriate." ***Williams v. Williams (In re Guardianship of Duckett)***, 991 So. 2d 1165, 1181 (Miss. 2008) (citing ***DuPree v. Carroll***, 967 So. 2d 27, 30 (Miss. 2007)).    "The primary rule of [statutory] construction is to ascertain the intent of the legislature from the statute as a

whole and from the language used therein." *Id.* at 1181–82 (internal quotation marks omitted) (quoting *Bailey v. Al–Mefty*, 807 So. 2d 1203, 1206 (Miss. 2001)).

**DISCUSSION**

I. **Jurisdiction of the Chancery Court and the Preamendment Version of Mississippi Code Section 27-77-7(4) (Rev. 2010)**

¶18.    The taxpayers argue that the chancery court lacked jurisdiction to hear the taxpayers' appeal because the MDR failed to meet the jurisdictional requirements of Section 27-77-7(4). The taxpayers further assert that the chancery court, a court which they allege did not have jurisdiction over the matter, was required to dismiss with prejudice the MDR's answer and defenses and to enter a judgment granting the taxpayers all relief they requested in their petition.    The MDR argues that this issue is not properly before this Court because the taxpayers failed to file a cross-appeal and that Section 27-77-7 does not apply to this case because the MDR contests all payments made by the taxpayers in the returns at issue. Because the taxpayers assert that this is a threshold issue, we address it first.

¶19.    In 2014, the Mississippi Legislature amended Mississippi Code Section 27-77-7 with the passage of House Bill 799.  Section 27-77-7 was amended in section 17 of the House Bill.  H.B. 799, Reg. Sess., 2014 Miss. Laws ch. 476, § 17.  In section 19 of House Bill 799, the Legislature went on to state that

> Nothing in Sections 15, 16 or 17 of this act shall affect or defeat any assessment, refund claim, request for waiver of a tax penalty or claim for tax credits or incentives or the administrative appeal or judicial appeal thereof where the initial date of said assessment, refund claim, tag penalty, claim for tax credits or incentives is before the date on which this act becomes effective. The provisions of the laws relating to the administrative appeal or judicial review of such actions which were in effect prior to the effective date of this

8

act are expressly continued in full force, effect and operation for the purpose of providing an administrative appeal and/or judicial review of any assessment, refund claim, request for waiver of a tag penalty or claim for tax credits or incentives where the initial date of said assessment, refund claim, tag penalty, claim for tax credits or incentives is before the date on which this act becomes effective.

H.B. 799, Reg. Sess., 2014 Miss. Laws ch. 476, § 19 (effective Jan. 1, 2015).

¶20.   Because the taxpayers filed their amended tax returns and refund claims on or about September 15, 2014, the version of Section 27-77-7(4) that would apply to this case is the preamendment version, which reads, in pertinent part, as follows

> In an action under this section resulting from an order of the Board of Tax Appeals involving a refund claim denial, the agency shall refund or credit to the taxpayer, as provided by law, the amount of any overpayment included in the refund claim which the agency does not contest. . . .  If the petition initiating the appeal is filed by the taxpayer, such uncontested overpayment shall be paid or credited to the taxpayer prior to the expiration of the thirty-day time period for the filing of an answer . . . .  Failure of the agency to timely pay or credit the uncontested overpayment to the taxpayer shall bar the agency from obtaining an affirmation, in whole or in part, of the refund claim denial in issue and shall result in the agency's appeal or cross-appeal being dismissed with prejudice and judgment being entered granting the taxpayer the relief he requested, excluding however any request for the awarding of attorney fees.

Miss. Code Ann. § 27-77-7(4) (Rev. 2010).

¶21.   We find that Section 27-77-7(4) does not apply to this case because the MDR contested the taxpayers' payments in full.  Because there were no uncontested overpayments in this case, the MDR was not required to issue a refund or credit to the taxpayers within the thirty-day time period for the filing of its answer.

¶22.   The taxpayers claim that their overpayment of $2,402,849 was uncontested by the MDR, but the MDR clearly contests that payment and argues that before there can be an

9

allocation of any amount, the amount of available credit to be allocated must first be determined. Although the MDR conceded the issue of how the credits are allocated between the taxpayer's franchise-tax liability and income-tax liability, the MDR still contests the issue of how the limit on the credits is computed. Because the credit-computation issue must first be resolved before any payments by the taxpayers may be deemed appropriate payments, underpayments or overpayments, the MDR continues to contest the payments made by the taxpayers in their entirety. Therefore, no uncontested overpayments exist in this case.

¶23. After review, we find the taxpayers' argument that the chancery court lacked jurisdiction to be without merit and that the chancery court had jurisdiction to hear the matter.

## II. The Chancellor's Interpretation of Mississippi Code Section 57-87-5

¶24. The MDR asserts that the only issue on appeal before this Court is the proper calculation of the broadband credits' 50-percent limitation under Mississippi Code Section 57-87-5. The chancellor determined that in order to calculate the amount to which the credits are limited, the taxpayer's tax liabilities under Chapters 7 and 13 of Title 27 of the Mississippi Code must first be established. The chancellor found that the taxpayer's tax liabilities were the aggregate of the taxes imposed by Chapters 7 and 13 and accordingly found that the 50-percent limitation should apply to the aggregate amount of the taxpayer's separate franchise-tax liability and the total combined income-tax liability of the affiliated group.

¶25. Mississippi Code Section 57-87-5(3) states in pertinent part,

10

The aggregate credit established by this section taken in any one (1) tax year shall be limited to an amount not greater than fifty percent (50%) of the taxpayer's tax liabilities under Chapters 7 and 13 of Title 27, Mississippi Code of 1972; however, any tax credit claimed under this section, but not used in any taxable year, may be carried forward to ten (10) consecutive years from the close of the tax year in which the credits were earned.

Miss. Code Ann. § 57-87-5(3) (Rev. 2014).

¶26.    According to the MDR's own regulations, "[e]ach member of the affiliated group is severally liable for the tax on a consolidated or combined return and for any subsequently determined deficiency thereon. No intercompany agreement can change this rule." 35 Miss. Admin. Code Pt. III, R. 8.07(102.5) (adopted Nov. 17, 2011), Westlaw.

¶27.    This Court has "held that each entity's tax liability was the same as the tax liability of the affiliated group, because each entity was jointly and severally liable for that amount." *Miss. Dep't of Revenue v. Isle of Capri Casinos, Inc.*, 131 So. 3d 1192, 1198 (Miss. 2014) (citing *Gen. Motors Corp. v. Miss. Tax Comm'n*, 510 So. 2d 498, 501 (Miss. 1987)). Here, the MDR claims that this case is distinguishable because the statute at issue in *Isle of Capri* did not involve a limitation on the amount of tax credits that could be used in a tax period. We find that this argument is without merit. The existence of a limitation on credit usage has no bearing on what the initial liabilities of the taxpayers are. The aggregate liability must be determined before the credit limitation can be computed. The fact that a credit limit exists has no bearing on the calculation of the initial aggregate franchise- and income-tax liabilities of the taxpayers.

11

¶28. Section 57-87-5 requires that the taxpayers' tax liabilities under Chapter 7 and 13 of Title 27 of the Mississippi Code first be determined before the limitation on the taxpayers' broadband credits may be computed.

¶29. The MDR argues that the chancellor's interpretation of the taxpayers' tax liabilities would allow the taxpayers to offset 90 percent of the taxpayers' liability.[2]

¶30. Section 87-57-5 makes it clear that the broadband credits may be applied against the taxpayers' aggregate tax liabilities, not against the hypothetical amount that the MDR determines is the portion for which each taxpayer is responsible.

¶31. According to the MDR's own regulations, the joint and several nature of the combined income-tax liability of the affiliated group and this Court's holdings in *Isle of Capri* and

[2]The MDR uses two pairs of misleading charts in its attempt to support this argument in its briefs. The first pair of charts labels one column "Liability" without mentioning that the liability to which the chart refers is only the taxpayer's franchise-tax liability and not the aggregate of the taxpayers' franchise- and income-tax liabilities. Because the MDR previously conceded the issue of how the taxpayer may allocate its credits, once 50 percent of the taxpayers' income- and franchise-tax liabilities has been determined, then it is perfectly acceptable for the taxpayers to allocate that number of credits towards its franchise-tax liability or income-tax liability. Therefore, a taxpayer is allowed to allocate all of its limited number of credits against its franchise-tax liability even if doing so would reduce the taxpayers' franchise-tax liability substantially.

In its second pair of charts, the MDR uses hypothetical income-tax liability amounts that it claims it calculated based on the taxable income that the taxpayers listed in the combined corporate income tax return. The income tax *liability* of the separate taxpayers was never listed on the combined return, nor did the MDR ever give definitive amounts of what the income tax *liabilities* of the separate taxpayers would be had they filed separate income tax returns. The MDR uses this chart in an attempt to support its argument that it would only be entitled to recover from each taxpayer the amount listed in the "Liability as Reported on Return" column of its second set of charts. The MDR's assertion here is incorrect. The MDR's regulations make it clear that the MDR is entitled to recover from any member of the affiliated group the entire amount of tax for which the affiliated group is liable.

12

*General Motors*, we find that the income-tax liability of any one taxpaying member of the affiliated group is the income-tax liability of the entire group. Therefore, the "taxpayer's tax liabilities" under Chapters 7 and 13 must be the sum of the taxpayers' separate franchise-tax liability and the total combined income-tax liability of the affiliated group.

¶32.    Subsection (2) of Section 57-87-5 further supports this reading of the statute. Section 57-87-5(2) states in pertinent part that the Broadband credits are allowed to be used "against the *aggregate* tax imposed by Chapter 7 and 13 of Title 27 . . . ." of the Mississippi Code. Miss. Code Ann. § 57-87-5(2) (Rev. 2014) (emphasis added). When subsections (2) and (3) of Section 57-87-5 are read together, it is clear that the Legislature intended for the taxpayers' tax liability to be the aggregate of the tax imposed by Chapters 7 and 13 of Title 27 of the Mississippi Code.

¶33.    The MDR also argues that the taxpayers' proposed method of computation would constitute a windfall for the taxpayers. We find this argument to be without merit. The allocation issue is not in dispute. This Court has clearly held that the income-tax liability of a member of an affiliated group filing a combined corporate income-tax return is the liability of the entire group. The Mississippi Legislature has passed no legislation that contradicts that holding, and therefore we continue to apply that precedent. We have no reason to believe the legislature intended otherwise and have been presented no evidence to the contrary.

¶34.    Accordingly, we find that the broadband credit limitation should be computed as 50 percent of the aggregate of its separate franchise-tax liability and the total combined tax liability of the affiliated group. Under the law, and as the MDR has conceded, the taxpayers

13

may allocate these limited amount of credits to offset their franchise- and/or income-tax liabilities however the taxpayer determines to be most beneficial.

## CONCLUSION

¶35. After review, we find that the chancery court had jurisdiction to hear the matter and affirm the chancellor's ruling on the credit-computation issue. The plain and unambiguous language of Section 57-87-5 clearly limits broadband credits that a taxpayer may take in any given year to 50 percent of the aggregate of the taxpayers' franchise-tax liability and the total combined income-tax liability of the affiliated group.

¶36. **AFFIRMED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, ISHEE AND GRIFFIS, JJ., CONCUR. RANDOLPH, C.J., NOT PARTICIPATING.**