# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-CA-01126-SCT

*IN RE VALIDATION OF UP TO $27,600,000*
*TRUST CERTIFICATES EVIDENCING*
*PROPORTIONAL INTERESTS IN A LEASE BY*
*THE SIMPSON COUNTY SCHOOL DISTRICT:*
*THOMAS FLOYD, RAY FLOYD, LEE McCOY,*
*AND JASON McCOY*

*v.*

*SIMPSON COUNTY SCHOOL BOARD*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/22/2023 |
| TRIAL JUDGE: | HON. GERALD MARION MARTIN |
| TRIAL COURT ATTORNEYS: | WESLA ANN LEECH-SULLIVAN |
| | JAMES W. YOUNG, JR. |
| | JOHN S. HOOKS |
| | VERNON WARREN GREENLEE |
| | GEORGE S. WHITTEN, JR. |
| | DEREK ROYCE ARRINGTON |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | GEORGE S. WHITTEN, JR. |
| ATTORNEYS FOR APPELLEE: | JOHN S. HOOKS |
| | VERNON WARREN GREENLEE |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 11/14/2024 |
| MOTION FOR REHEARING FILED: | |

**BEFORE RANDOLPH, C.J., COLEMAN AND CHAMBERLIN, JJ.**

**CHAMBERLIN, JUSTICE, FOR THE COURT:**

¶1. The Simpson County School District seeks validation of up to $27,600,000 in trust

certificates for a lease/leaseback transaction in order to fund the construction of a

consolidated and centrally located high school for Simpson County pursuant to the

Emergency School Leasing Authority Act (E.S.L.A.), Mississippi Code Section 37-7-351 to -359 (Rev. 2019). A resolution adopted by the Simpson County School Board (Board) was published on June 10, 2021, pursuant to the requirements of Mississippi Code Section 37-7-355(1) (Rev. 2019) to enable the Board[1] to "sell, lease, lend, grant or otherwise convey to a corporation, individual or partnership, with or without consideration . . . up to ten (10) school facilities together with other real or personal property which may be necessary, useful or convenient for the purposes of the District." No challenge to the resolution through the filing of a protest was made. *See* Miss. Code Ann. § 37-7-355(2) (Rev. 2019). Subsequently, the Board, on July 19, 2021, adopted a resolution authorizing itself to take action in compliance with the E.S.L.A.

¶2.     More than a year later, on August 23, 2022, the Board adopted a resolution that approved certain documents to put in place a lease/leaseback transaction as authorized by its June 10 and July 19 resolutions. Following the validation requirements of Mississippi Code Section 31-13-5 (Rev. 2019), the Board submitted its resolution to the Simpson County Chancery Court for validation. An objection to the validation was timely filed on the grounds that the Board cannot use the E.S.L.A. because it is extinct, the notice published by the Board is insufficient and violates due process, the Board does not have authority to create a corporation to engage in the lease/leaseback transaction and the Board unlawfully amended its minutes. The chancellor granted the Board's validation request and found all the

---

[1]The Board takes action on behalf of the Simpson County School District. *See* Miss. Code Ann. § 37-7-301 (Supp. 2024).

objections to be without merit.  The objectors appeal and seek reversal of the chancellor's decision.

¶3.     The objectors ask this Court to overturn the validation and require the Board to restart the funding process.  The objectors' stated reason for the objection is to require the Board to republish so that the objectors can trigger the election requirements under Section 37-7-355(2) and submit the funding to a public vote.  This Court finds that the chancellor did not err by granting validation.  The decision of the chancellor is affirmed.

## FACTS AND PROCEDURAL HISTORY

¶4.     On June 10, 2021, the Board approved the advertisement of a Capital Lease Resolution of Intent.  A copy of the agreed-upon resolution to be advertised was not included in the June 10 meeting minutes.  The June 10 minutes also state that "The Board called a special meeting on July 19 @ 5:30 pm to adopt Capital Lease Resolution of Intent."  On July 8, 2021, the June 10 meeting minutes were approved as correct.

¶5.     The resolution was subsequently published in a local newspaper on June 17, 2021, June 24, 2021, July 1, 2021, and July 8, 2021.  The resolution in the newspaper stated:

> RESOLUTION DECLARING A NEED TO LEASE SCHOOL FACILITIES
> BE IT RESOLVED by the Board of Education (the "Board") of Simpson County School District, Simpson County, Mississippi (herein referred to as the "District"), as follows:
>
> 1. A need exists in the District for the acquisition, renovation, improvement, construction and equipping of up to ten (10) school facilities within the District.
> 2. The District cannot provide the necessary funds to pay the cost or its proportionate share of the cost of the renovations, acquisitions, improvements, construction and equipping of the school facilities required to meet the present needs of the District.

3

3. The District desires to sell, lease, lend, grant or otherwise convey to a corporation, individual or partnership, with or without consideration, or to permit such corporation, individual or partnership to use, maintain or operate as part of public school facilities, pursuant to Section 37-7-351 through 37-7-359 of the Mississippi Code of 1972, as amended (the "Act") up to ten (10) school facilities together with other real or personal property which may be necessary, useful or convenient for the purposes of the District. Any such sale, lease, loan, grant or conveyance shall be for a period of time not to exceed twenty (20) years, and title to any real property transferred by the District shall revert to the District at the expiration of such term.

4. The District desires to lease or lease-purchase up to ten (10) school facilities, which may include the school facilities sold, granted, or otherwise conveyed by the District pursuant to paragraph 3 above.

5. The District proposes to take final action upon the question of the sale, lease, loan, grant or other conveyance of such school facilities and on the question of leasing or lease-purchasing such school facilities, at a regular meeting of the Board of Education of the District to be held at noon on July 19, 2021 at the Board's regular meeting place in the Central Office located at 111 Education Lane, in the City of Mendenhall, Mississippi, which date is not less than thirty days after the date of first publication of this resolution, unless prior to such meeting a petition signed by not less than twenty percent (20%) or fifteen hundred (1,500), whichever is less of the qualified electors of the District shall be filed with the District requesting that an election be called on such question. If such a petition is timely filed, the District shall, not later than its next regular meeting, adopt a resolution calling an election to be held within the District upon the questions of authorizing the Board to sell, lease, lend, grant or otherwise convey such facilities, and to lease or lease-purchase such facilities. Such election shall be called and held, and the result determined, pursuant to and as provided by the Act.

6. The District shall use funds currently available in its District Maintenance Fund to pay certain initial costs of the acquisition and construction of the Project, as subsequently identified by the Board, with such expenditures to be reimbursed from a portion of the proceeds of the Notes, when issued. The allocation of the Note proceeds to reimburse the District Maintenance Fund shall be made in writing not later than 18 months after the later of: (a) the date the original expenditure is paid or (b) the date the Project is placed in service or abandoned, but in no event more than three years after the original expenditure is paid. The expenditures to be reimbursed from the Note proceeds shall be incurred solely to acquire, renovate, construct, or improve property having a reasonably expected economic life of at least one year and to pay the cost of such acquisition, construction and improvements. The Note proceeds shall be used to reimburse these expenditures, and not for the

reimbursement of operating costs or similar working capital items. This resolution is the official action of the Board adopted as required by regulations promulgated by the Internal Revenue Service governing the reimbursement of prior expenses from note proceeds.

Having received a majority of the affirmative votes of the Board, the Resolution passed on this the 10th day of June 2021.

BOARD OF EDUCATION OF THE SIMPSON COUNTY SCHOOL DISTRICT

¶6. On July 19, 2021, the Board convened for the aforementioned special meeting. The Board adopted and spread upon the July 19 minutes a resolution. The July 19 resolution noted that "on June 10, 2021, the Board of Education of Simpson County School District adopted a Resolution entitled 'RESOLUTION DECLARING A NEED TO LEASE SCHOOL FACILITIES'" and that the Board had published the "resolution once a week for at least three consecutive weeks in the Simpson County News, a newspaper of general circulation in the District[.]" The Board found that no petition had been filed in response to the June 10 resolution so no election was required.[2] The Board determined that it was authorized and empowered under the E.S.L.A. to take action. The actions described in the July 19 resolution were substantially similar to the June 10, 2021 resolution published in the newspaper—"sell, lease, lend, grant or otherwise convey to a corporation . . . all or part of public school facilities, pursuant to the Act, up to ten (10) school facilities together with other real or personal property. . . . [and] 'lease' pursuant to a lease-leaseback arrangement up to ten (10) school facilities[.]" The District further detailed that the "Lease Project" was

---

[2]The filing of a petition that meets the statutory requirements of Section 37-7-355(2) would require the Board to submit the validation to a public vote in the same manner as an election on issuing bonds. Per Section 37-7-355(2), at least three-fifths of the qualified electors of the school district who voted would have to give approval. *Id.*

5

to be implemented in phases and that the superintendent was authorized to solicit proposals and negotiate with "banks, lending institutions, placement agents or underwriters regarding the financing terms of the Lease Project." The July 19 resolution was approved by all Board members except Stacey Herrin.

¶7. On May 27, 2022, at a special meeting, the Board unanimously voted in favor of a nunc pro tunc amendment to the June 10, 2021 meeting minutes to include by reference the actual language of the published June 10 Resolution.[3] A copy of that resolution with the votes and signature of the president and secretary of the Board was attached. Proof of publication and a copy of the advertisement from the legal notices section of the newspaper also were attached.

¶8. The Board attempted to issue bonds and attempted a different validation proceeding under the E.S.L.A in 2022. The issuance election failed, and the validation proceedings were dismissed at the Board's request. Then, on August 23, 2022, the Board adopted a resolution to enable it to enter into a lease/leaseback transaction with a nonprofit corporation and issue trust certificates in an amount not to exceed $27,600,000 for acquiring, constructing and equipping a centrally located high school in the Simpson County School District. The resolution was passed with all but one board member, Stacey Herrin, voting in favor. The August 23 Resolution relied on the June 10, 2021 resolution, the July 19, 2021 resolution and the E.S.L.A.

---

[3]The actual June 10 minutes were not physically edited. A notation was placed on the June 10, 2021 minutes to indicate they had been amended on May 27, 2022. The May 27, 2022 minutes explained and included the June 10, 2021 amendment.

¶9. The lease/leaseback transaction, detailed in the August 23 resolution, involved land owned by the Simpson County School District (District). The Board authorized the registration and creation of the Simpson County School District Leasing Corporation (Corporation), a nonprofit corporation, that would be controlled by the Board and would aid in lease financing for the project. The District would lease its property to the Corporation, and the Corporation would lease the very same property back to the District.

¶10. Simultaneously, the Corporation through an agency agreement would appoint "the District as its agent in connection with the acquisition, construction, delivery and installation of the project[.]" The Corporation would also transfer all of its "right, title and interest" in the lease with the District to a trustee at a bank or institution that would facilitate the sale of trust certificates. The District and the trustee would enter into a trust agreement signifying that the trustee would issue trust certificates that evidence "a proportionate interest in the Lease," including the right to receive payment from the District. The documents approved by the August 23 resolution included the documents relating to the sale of trust certificates to finance the project, i.e., agency agreement, assignment agreement, corporate documentation, leases and a trust agreement. The documents provided for a lease term of twenty years with title to revert back to the District at the end of twenty years.

¶11. The Board then sought validation of the August 23 resolution in the Simpson County Chancery Court.[4] A certified copy of the transcript, along with the state bond attorney's

---

[4]Although the E.S.L.A. is not a bond-issuing statute, school districts still seek validation from the court as the lease arrangement is a written obligation. *See Cox v. Jackson Mun. Separate Sch. Dist.*, 503 So. 2d 265, 268 (Miss. 1987).

opinion recommending validation was filed on September 22, 2022. Notice to Taxpayers, as required for validation pursuant to Section 31-13-5, was published by the chancery clerk, and Thomas Floyd, Ray Floyd, Jason McCoy and Lee McCoy (collectively, "Floyd") timely objected. The chancellor required Floyd to give notice to the attorney general regarding any challenge against the E.S.L.A. Floyd gave notice, stating that the challenge was not to the E.S.L.A.'s constitutionality but instead that the E.S.L.A. has served its declared purpose and should no longer be used to finance capital improvement projects.

¶12. On October 19-20, 2022, and October 31, 2022, the chancellor held a hearing. The Mississippi Office of the Attorney General was present and took the position that the chancellor could "freely rule on applying the law as it is to the facts that are before it without reaching the constitutionality, without reaching the issue of whether the law itself is extinct." Spence Flatgard, former state bond attorney, testified that the statutory requirements were satisfied and recommended validation. Derek Arrington, the state bond attorney at the time, testified that in his opinion, based on the statutes, proper procedure was followed and sufficient notice was given. His recommendation remained the same as his original filing in the case—the debt should be validated.

¶13. Toriano Holloway, superintendent of the District at the time, and Fran Bridges, administrative assistant to the superintendent and Board, both testified to the procedures used by the Board. Specifically, they were asked about the nunc pro tunc amendment. Holloway also testified to the great need of the District for the new school facility. It was his opinion that the buildings were in disrepair, and every building needed a total roof replacement. He

had received feedback from parents and students who expressed their displeasure with the school facilities. Because enrollment was suffering, the school was unable to offer advanced placement (AP) classes, which created a disadvantage for the District. Further, the schools were unable to offer computers classes and Reserve Officers' Training Corps (ROTC) opportunities to the students due to the inadequacy of the facilities and technological infrastructure.

¶14. Counsel for Floyd introduced a page of the June 10, 2021 meeting minutes that he discovered had been omitted from the official transcript sent to the state bond attorney. The missing page was admitted as an exhibit. It was Flatgard's opinion that the omission of the sixth page changed nothing. It does not appear that Arrington was asked for his opinion on the missing page.

¶15. On September 23, 2023, the chancellor entered a sixteen-page final judgment validating the August 23 resolution. On October 10, 2023, Floyd filed a notice of appeal.

## ISSUES PRESENTED

¶16. Floyd's objections to the validation are best summarized as follows:

    I.     Whether the nunc pro tunc amendment to the June 10, 2021 minutes was lawful.

    II.    Whether the Board's published notice was sufficient.

    III.   Whether the Board has authority to create a nonprofit corporation.

    IV.   Whether the E.S.L.A. is still applicable.

## STANDARD OF REVIEW

¶17.    In a validation proceeding, we review the chancellor's determination with great deference. ***Shipman v. N. Panola Consol. Sch. Dist.***, 641 So. 2d 1106, 1114 (Miss. 1994). "[T]he findings [of the chancellor] will not be disturbed unless the chancellor abused his discretion, was manifestly wrong or clearly erroneous, or an erroneous legal standard was applied." ***Id.*** at 1115 (alterations in original) (quoting ***Madden v. Rhodes***, 626 So. 2d 608, 616 (Miss. 1993)). Issues of statutory interpretation, however, will be reviewed under a de novo standard of review. ***HWCC-Tunica, Inc. v. Miss. Dep't of Revenue***, 296 So. 3d 668, 673 (quoting ***Chandler v. McKee***, 202 So. 3d 1269, 1271 (Miss. 2016)).

¶18.    Floyd argues that this Court is not bound by the stated standard of review because there was very little caselaw to guide the chancellor. Floyd's contention is without merit. The standard of review in this case is based on the premise that the chancellor was "the only one to hear the testimony of witnesses and observe their demeanor[.]" ***Shipman***, 641 So. 2d at 1115 (quoting ***Madden***, 626 So. 2d at 616). Accordingly, the chancellor is "best able to determine the veracity of [the] testimony, and this Court will not undermine the chancellor's authority by replacing his judgment with its own." ***Id.*** (quoting ***Madden***, 626 So. 2d at 616).

## DISCUSSION

### I.    Whether the nunc pro tunc amendment to the June 10, 2021 minutes was lawful.

¶19.    The Board, similar to a "governing body such as a board of supervisors or city council" may amend its minutes "to ensure that they speak original truth or further explain the original rationale of the action." ***Huey Stockstill, Inc. v. Hales***, 730 So. 2d 539, 544 (Miss. 1998). "In ***Walters v. Validation of $3,750,000 School Bonds***, 364 So. 2d 274, 276

10

(Miss. 1978), this Court implicitly recognized that a governing body may, at a subsequent meeting, amend the minutes of the prior meeting to reflect what actually occurred on the first occasion." *Hales*, 730 So. 2d at 543-44.

¶20. On May 27, 2022, the Board's minutes reflect that a "Motion to amend, nunc pro tunc, the Board minutes of June 10, 2021, to spread the Lease Resolution of Intent attached hereto and incorporated herein by reference into the June 10, 2021 minutes" was approved. The amendment, which was attached to the May 27 minutes, contains a printout copy of the published notice from the newspaper, proof of publication, and a typed copy of the June 10, 2021 resolution with the votes and signatures at the end. The amendment was related to an action of the Board on the fourth page of the June 10, 2021 minutes, which stated: "Advertisement of Lease Resolution of Intent: the Board approved the advertisement of a Capital Lease Resolution of Intent to be published in the local newspaper for the next four weeks beginning June 17, 2021."

¶21. The chancellor found that the nunc pro tunc amendment was a correction to "properly reflect the adoption of the resolution (and recognizing that the same resolution was published in the local paper as the resolution of the School Board)." The chancellor also found that this amendment was necessary to correct "what might have otherwise been a fatal flaw in the transcript of this matter."

¶22. Floyd contends that the chancellor's finding was an abuse of discretion because the amendment to the June 10 minutes was unlawful. Floyd argues that the June 10 resolution was not actually an adoption of a resolution but instead was an agreement to advertise for a

11

resolution that would later be adopted. He relies on Flatgard's testimony, elicited on cross-examination, that in Flatgard's experience, a distinction exists between adoption of a resolution and an agreement to advertise. Flatgard stated that "it could be two separate resolutions. Sometimes the resolution itself directs the issuer to publish it in the newspaper."

¶23. Floyd also relies on Board secretary Fran Bridges's testimony regarding her role as the minute keeper at the meetings. She stated: "I don't make corrections to my minutes on a normal day-to-day basis because I hardly ever make mistakes in them." Further, Floyd argues that the minutes were approved by the Board on July 8, meaning that they were correct on July 8 and that a subsequent amendment would be inconsistent. He argues that if this Court allows the amendment to stand, then members of the Board have been "hoodwinked" as to what was actually occurring at these meetings.

¶24. Floyd argues that Board members thought they were approving the advertisement of a resolution that would, at the July 19 meeting, be open to public critique and discussion. It is his opinion that, "[a]s a presumptive rule, minutes as originally prepared for approval and then approved by the public body, carry more credibility than an amendment to those minutes made eleven months later." He cites no authority for this "presumptive rule."

¶25. Lastly, Floyd argues that the May 27 amendment creates a contradiction within the June 10 meeting minutes. He produced a certified copy of the June 10 minutes that contained a sixth page that was not in the transcript submitted to the state bond attorney. Floyd states that the missing sixth page of the minutes gives rise to an inference of spoliation, but no

inference is actually needed because the page was produced for the Court. *See Thomas v. Isle of Capri Casino*, 781 So. 2d 125, 133 (Miss. 2001) (discussing spoliation).

¶26. Floyd contends that the sixth page, whether intentionally or negligently withheld by the Board from consideration, contradicts the Board's contention that it adopted a resolution on June 10. The sixth page of the June 10 meeting minutes contains an action item that states "Special Called Meeting on July 19 @ 5:30 The Board called a special meeting on July 19 @ 5:30 to adopt Capital Lease Resolution of Intent." Floyd contends that this proves that the Board did not adopt the advertised resolution on June 10. Floyd contends that the absence of this page caused the record considered by the state bond attorney to be deficient. Further, to add page six to the record, Floyd contends, would require another validation hearing, which, in Floyd's opinion, indicates page six's absence is more than a "purely technical inaccuracy." *Shipman*, 641 So. 2d at 1121.

¶27. The Board contends that the May 27 amendment was merely a correction to reflect an action taken but improperly recorded. The Board avers that the Resolution of Intent[5] was adopted on June 10. The Board argues that Floyd refuses to acknowledge the language within the July 19 resolution on the Board's minutes that specifically states that the Board adopted the Resolution Declaring a Need to Lease School Facilities on June 10. Floyd also refuses to acknowledge the language of the advertised resolution stating that it was adopted

---

[5]The Resolution of Intent is referenced by different names: Capital Lease Resolution of Intent, Resolution of Intent, Resolution Declaring a Need to Lease School Facilities. These names are interchangeably used by the parties, and the parties do not claim this detail is significant.

13

on June 10. The Board further argues that Floyd has produced no evidence to support his position that the members of the Board were deceived and, apparently, none claim to have been.

¶28. The Board avers that the absence of the last page of the June 10 minutes was harmless error and that both state bond attorneys opined, based on the allegedly insufficient transcript, that the record supported validation. It was the opinion of the former state bond attorney that the omission of the sixth page changed nothing. It is the Board's position that if the allegedly deficient record supported validation, then the inclusion of the sixth page, which provides notice of the July 19 meeting, should all the more support validation. *Shipman*, 641 So. 2d at 1120 (finding that if the state bond attorney approved the issuance of the bonds without evidence of proper notification of the meeting, assuredly, he would have approved issuance with the notification).

¶29. Floyd, in return, contends that the Board can only speak through its minutes, so any evidence or testimony by a member of the Board would have been inadequate to challenge the official record of the Board. *Thompson v. Jones Cnty. Cmty. Hosp.*, 352 So. 2d 795, 796 (Miss. 1977) ("We have held in many cases that boards of supervisors and other public boards speak only through their minutes and their actions are evidenced solely by entries on the minutes." (citing *Miss. State Highway Comm'n v. Sanders*, 269 So. 2d 350 (Miss. 1972))). Further, Floyd argues that there was a "bare quorum" at the May 27 meeting that reduced the number of potential witnesses Floyd could call.[6]

---

[6]The record shows that Board members Patrice Boykin, Danny Cowart and Stan Bulger were present at the May 27 meeting. The superintendent, secretary and board

14

¶30.   Floyd states that he was not allowed time for discovery and was only provided nineteen days from the notice of the validation to the time of the hearing.  Lastly, Floyd's counsel contends that the sixth page was not missing from the transcript of a prior validation hearing, and its disappearance caused counsel to realize the conflict of the sixth page with the minutes of the Board and raise this new argument.  Accordingly, calling a school board member to testify "was not considered."

¶31.   This Court finds that the chancellor did not abuse his discretion by finding that the nunc pro tunc amendment to the June 10 minutes to add, by reference, the language of the June 10, 2021 resolution was lawful.  The evidence presented supports that the amendment is a reflection of what actually occurred at the June 10 meeting.  *See **Hales***, 730 So. 2d at 544 (citing ***Walters***, 364 So. 2d at 276).  The action item on page 4 of the June 10 minutes states: "Advertisement of Lease Resolution of Intent: The Board approved the advertisement of a Capital Lease Resolution of Intent to be published in the local newspaper for the next four weeks beginning June 17, 2021."  The votes were then listed as Danny Cowart, Patrice Boykin, Stan Bulger, Lillie Hardy and Stacey Herrin in favor and none voting against.  These votes are consistent with the copy of the June 10 resolution that was adopted in the May 27 amendment.

¶32.   The June 10 minutes clearly show that the Board agreed to advertise a resolution.  It is inherent in the Board's agreement to advertise a resolution that the Board necessarily agreed upon a resolution.  Although the Board did not specifically state in the June 10, 2021

---

attorney were also present.  Board members Stacey Herrin and Lillie Hardy were absent.

15

minutes when the June 10 resolution was adopted, other pieces of evidence support a rational finding that the Board adopted the June 10, 2021 resolution on June 10. The July 19, 2021 resolution contained in the Board's minutes stated that the resolution advertised in the newspaper had been adopted on June 10. Additionally, the plain language of the June 10, 2021 resolution stated that it was adopted on June 10, but final action would be taken on July 19.

¶33. No Board member would have been "hoodwinked" when the June 10 resolution that was advertised clearly stated that it had been adopted by the Board on June 10, and the Board, later speaking through its July 19 minutes, affirmed that it had adopted the resolution on June 10. The same Board members voted on the June 10 resolution and the July 19 resolution. The chancellor did not abuse his discretion by approving the addition of the copy of the resolution with the listed votes to the June 10 minutes because it aligns with the original action taken by the Board.

¶34. Regarding Floyd's contentions as to the actions on page six of the June 10 minutes, we find that the pages of the minutes are consistent. The chancellor heard Floyd's allegations that the sixth page was intentionally omitted by the Board. Further, the chancellor was presented with the sixth page of the minutes and still found that the amendment was lawful. The chancellor, however, did not specifically address the impact of the sixth page. "[W]ith respect to issues of fact where the chancellor made no specific finding, we are required by our prior decisions and by sound institutional considerations to proceed on the assumption that the chancellor resolved all such fact issues in favor of appellee." *Shipman*,

16

641 So. 2d at 1115 (internal quotation marks omitted) (quoting *Bryant v. Cameron*, 473 So. 2d 174, 179 (Miss. 1985)).

¶35. The sixth page merely shows that the Board was deciding when it would reconvene on the Capital Lease Resolution of Intent. Although the Board used the word "adopt" in the action on the sixth page, this does not create any inconsistency in the Board's actions. The Board consistently noted in its resolutions and its minutes that there was a June 10 resolution and a July 19 resolution. This is consistent with the statutory requirements of the E.S.L.A. *See* § 37-7-355(2). Further, the sixth page of the June 10 minutes is consistent with the plain language of the June 10 resolution, that final action would be taken by the Board on July 19. The Board, in compliance with the notice requirements of Section 37-7-355, did not take final action until July 19, 2021. The July 19 minutes further evidence this consistency by stating that the Board "took up for consideration a resolution entitled 'RESOLUTION DECLARING A NEED TO LEASE SCHOOL FACILITIES,' adopted June 10, 2021." The action listed on page six does not create an inconsistency with the June 10 resolution.

¶36. The absence of the sixth page, however, reveals that the Board erred under the statutory validation procedure by failing to submit "a certified copy of all legal papers" to the state bond attorney and the chancellor. § 31-13-5. This Court has not addressed the impact of a defective record in the context of debt validation under the E.S.L.A. This Court's logic in ruling on a defective record in a bond validation case for a school board is applicable. *Shipman*, 641 So. 2d at 1121 (citing § 31-13-5). This case and *Shipman* are similar because the parties in both were required to follow validation procedures under Section 31-13-5.

17

¶37. In *Shipman*, the Court was reviewing the bond validation and election of school bonds for the North Panola Consolidated School District. *Id.* at 1114. The objectors to the bond validation claimed, among other things, that the Board had failed to provide proper notice of a meeting and that the failure to provide proper notice had created a defect in the record that was sent to the state bond attorney. *Id.* at 1120. The chancellor first found that, although the school board had failed to provide proper notice of its meeting, this action did not, under any statute, void the actions of the school board taken at the meeting. *Id.* at 1116. The chancellor noted that, although the validation proceedings pursuant to Section 31-13-5 required "the inclusion of 'all legal papers pertaining to the issuance of bonds,' invalidating the bonds because of the absence of a document which would have made a positive opinion by the Bond Attorney even more likely would be nonsensical." *Id.* at 1121 (quoting § 31-13-5). Because the state bond attorney, without proof of the proper notice, had recommended validation, the chancellor found the defect in the transcript was harmless. *Id.*

¶38. The same rationale applies here. Based on *Shipman*, the omission of page six from the transcript sent to the state bond attorney was harmless. Page six provides notice of the July 19 meeting where the Board would take final action on the Capital Lease Resolution of Intent. Although Floyd does not challenge the absence of page six for the same reasons as the objectors in *Shipman*, Floyd argues that its absence creates a defective record requiring this Court to reverse the chancellor's determination in favor of validation. The inclusion of page six would only further evidence that proper procedure was followed, i.e., proper notice of the meeting was placed in the minutes. The defect in the transcript was harmless. The

18

chancellor did not abuse his discretion by approving the amendment of the June 10 minutes with the copy of the published resolution.

**II.      Whether the Board's published notice was sufficient.**

¶39.   Floyd contends that the Board failed to provide sufficient notice with the information contained in the June 10 resolution.  Floyd challenges the substance of the published notice and raises a due process argument.

*A.      Substance of the Notice*

¶40.   The E.S.L.A. does not specifically state what must be included in the published notice. This Court has, however, stated that "[t]he Legislature provided in the act that a school board, by resolution may declare (1) that a need exists for school buildings, and (2) that the school district cannot provide the necessary funds to meet the present needs." *Cox*, 503 So. 2d at 267.  Section 37-7-355(2) requires that "[t]he resolution must then be published once each week for three consecutive weeks, and, if no petition is filed by twenty percent (20%) or fifteen hundred (1,500) electors (whichever is less) of the school district, the board may proceed to lease the school buildings, subject to the funding." *Id.*; § 37-7-355(2).

¶41.   This Court has only addressed the E.S.L.A. in one case, *Cox*, in which the Jackson Municipal Separate School District used the E.S.L.A. to "lease/purchase" facilities for a kindergarten program and entered into two other leases for three school buildings—one for renovation of two existing school buildings and another for an entirely new school facility. *Id.* at 266-67.  This Court affirmed the chancellor's finding that the leases satisfied all statutory requirements and the chancellor's ruling in favor of validation.  *Id.*  None of the

19

notices were copied into the Court's opinion as an example of sufficient notice. *Id.* at 269. The Court's dispositive finding in *Cox* was that the objectors had untimely challenged the validation decree. *Id.* at 268. The validation decree by the chancellor "foreclosed all complaints[,]" so the objectors' case was dismissed. *Id.* at 268, 269.

¶42. The chancellor in this case found that *Cox* "did nothing to interpret the details of the statute or address the sufficiency of action thereunder as it pertains to the validation of public debt." The chancellor reasoned that the Board's June 10 resolution "tracks the broad wording of the statute and includes acquisition, renovation, improvements, etc." The June 10 resolution did not include "any specific language related to the construction of a new school campus or that the district proposed to incur cost and debt of up to $27,600,000." The chancellor noted his concern with the generic language but relied on the current and former state bond attorneys who advised that "in their opinions the resolution which tracked the broad language of the statute was sufficient notice and that neither had ever required any specific language or any reference to monetary amounts or specific projects in order to recommend validation of a school district lease/leaseback financing transaction."

¶43. Floyd contends that the notice was vague and ambiguous. Floyd, in reliance on caselaw from the United States Court of Appeals for the Eleventh Circuit, argues that "[t]he question is not whether a particular individual failed to understand the notice but whether the notice is reasonably calculated to apprise intended recipients, as a whole, of their rights." *Coleman v. Dir., OWCP*, 345 F.3d 861, 865 (11th Cir. 2003) (alteration in original) (internal quotation marks omitted) (quoting *Jordan v. Benefits Rev. Bd. of U.S. Dep't of Lab.*, 876

F.2d 1455, 1459 (11th Cir. 1989)). He contends that the notice did not provide sufficient information for the residents of Simpson County to know that the Board was planning to build a single consolidated high school. He further argues that there was no indication that financing was to be obtained or what amount was to be financed.

¶44. Floyd argues that the notice should have to disclose the total amount to be borrowed and the nature of the project. He contends that the notice did not even adequately convey that the Board was going to borrow money. He also takes issue that the notice did not state whether the petition to provide for an election would need to be signed by "not less than twenty percent (20%) or fifteen hundred (1,500)" of the qualified electors. § 37-7-355(2). Floyd spends a considerable amount of his brief discussing alternative interpretations of the published resolutions, all to prove to this Court that under any reasonable interpretation, a reader would not have known the intended actions of the Board.

¶45. Floyd is correct that the notice did not provide details on the financing or the specifics of the project. Floyd's argument fails, however, because he does not prove that the Board had to provide such details. The E.S.L.A. does not contain such requirements.

¶46. As this Court recognized in *Cox*, school boards, by resolution, should state "(1) that a need exists for school buildings, and (2) that the school district cannot provide the necessary funds to meet the present needs." *Cox*, 503 So. 2d at 267. The June 10 resolution satisfied this requirement in the first two paragraphs, which provide:

> 1. A need exists in the District for the acquisition, renovation, improvement, construction and equipping of up to ten (10) school facilities within the District.

21

2. The District cannot provide the necessary funds to pay the cost or its proportionate share of the cost or its proportionate share of the cost of the renovations, acquisitions, improvements, construction and equipping of the school facilities requires to meet the present needs of the District.

The Board maintains that the statutory requirements were satisfied by the inclusion of this information alone. The June 10 resolution continues in the third paragraph, however, by tracking the language of Section 37-7-355(1) and stating that the District would

sell, lease, lend, grant or otherwise convey to a corporation, individual or partnership, with or without consideration, or to permit such corporation, individual or partnership to use, maintain or operate as part of public school facilities, pursuant to Section 37-7-351 through 37-7-359 of the Mississippi Code of 1972, as amended (the "Act") up to ten (10) school facilities together with other real or personal property which may be necessary, useful or convenient for the purposes of the District. Any such sale, lease, loan, grant or conveyance shall be for a period of time not to exceed twenty (20) years, and title to any real property transferred by the District shall revert to the District at the expiration of such term.

These terms were consistent with Section 37-7-355(1) of the E.S.L.A.

¶47. The notice provided in the June 10 resolution slightly diverges from the statutory language to inform the public that it was considering action on up to ten school facilities. The fourth paragraph specifically indicated that the District desired to "lease or lease-purchase up to ten (10) school facilities, which may include the school facilities sold, granted, or otherwise conveyed by the District pursuant to paragraph 3 above." The fifth paragraph informs the reader of when, where and how to challenge the Board's resolution. This Court finds that the June 10 Resolution satisfied the minimal requirements of Section 37-7-355.

22

¶48. The sixth paragraph of the resolution is specifically challenged by Floyd for its use of the terms "Project" and "Notes." He makes many arguments as to why the use of these terms creates confusion in the notice, but he cites no authority to support his conclusion. Importantly, Floyd does not show how the use of these terms would prevent validation. We find his arguments are without merit.

¶49. Floyd argues that this Court should look to other statutory notice requirements for what is required under the E.S.L.A. Floyd relies on *Sinquefield v. Valentine*, 159 Miss. 144, 132 So. 81, 83 (1931), a child custody case in which this Court reasoned that "[w]here a statute does not expressly provide for notice and a hearing, other statutes must be looked to, and the process authorized under them should be had before a decree or judgment can be entered." *Id.* at 83.

¶50. Floyd's reliance on *Sinquefield* is misplaced. First, *Sinquefield* is very obviously dealing with a completely different body of law and facts. Child custody disputes are governed by a totally different law, and notice requirements for child custody disputes are now addressed in our procedural rules. *See* Miss. R. Civ. P. 81. This alone makes the application or reliance on *Sinquefield* questionable for the debt validation issues we now review.

¶51. *Sinquefield*'s statement is also inapplicable because the E.S.L.A. does "expressly provide for notice and a hearing[.]" *Id.* at 83. Notice and a hearing are provided for in Section 37-7-355. The Board must adopt a resolution that has to be published "once each week for three (3) consecutive weeks in a newspaper having a general circulation in the

23

school district involved . . . ." § 37-7-355(2). While the actual contents of the notice are not detailed, the legislature allowed for a transaction under the E.S.L.A. to be made "on any terms and conditions" with or without consideration, for a term of twenty years, provided that title reverts back to the school district. § 37-7-355(1). The statute sets forth exactly what actions could be taken by the Simpson County residents if they desired to challenge the actions of the Board—file a petition requesting an election that is signed by a certain number of qualified electors. *See* § 37-7-355(2). ***Sinquefield*** is inapplicable, and no other statutory requirements apply.

¶52. The Board contends that it carried its burden under the statute. It relies on the state bond attorney's opinion that, generally, the published notice tracks the language of the statute to allow the issuing authority to "keep their options open as they narrow [the project] down toward the no-protest resolution and then the final adoption resolution." The chancellor stated that, although he was concerned about the generic and broad resolution, "the Court is relying on the opinion of the state bond counsel that publishing a resolution only using the broad language of the statute and without any specifics is sufficient to comply with MCA 37-7-355[.]"

¶53. Floyd contends that the chancellor erred by adopting the opinion of the state bond attorney despite the chancellor's stated concerns.[7] Floyd contends that the notice should not

---

[7]The opinion of the state bond attorney is not binding on this Court. It is merely a recommendation. A chancellor's mere reliance on the opinion of the state bond attorney does not require reversal as it can be, as in this case, correct. We review the chancellor's determination with deference. "Additionally, where the chancellor reaches a correct result in accordance with the law and facts, this Court will affirm the result even though 'a wrong reason be assigned.'" ***Love v. Barnett***, 611 So. 2d 205, 207 (Miss. 1992) (quoting ***Tedford***

24

be found sufficient merely because that is the way it has been done for years. He argues that the Court should require more. He brings forth two school bond validation cases and their respective notices for this Court to consider: ***Mills et al. v. Board of Supervisors of Greene County, Mississippi (In re Validation of $250,000 School Bonds, Greene County School District)***, 246 Miss. 470, 150 So. 2d 412 (1963), and ***Tedder et al. v. Board of Supervisors of Bolivar County***, 214 Miss. 717, 59 So. 2d 329 (1952)).

¶54.    The objectors in ***Greene County School District***, 150 So. 2d at 414 argued, among other things, that the published notice was too general. ***Greene Cnty. Sch. Dist.***, 150 So. 2d at 415. The noticed resolution stated that the Greene County School District sought to issue bonds in an amount not to exceed $250,000 for the purposes of:

> (a) Erecting, repairing equipping remodeling and enlarging school buildings and related facilities, including gymnasiums, auditoriums, lunch rooms, vocational training buildings, libraries, teacher's homes, school barns, garages for transportation vehicles, and purchasing land therefor;
>
> (b) Establishing and equipping school athletic fields and necessary facilities connected therewith, and purchasing land therefor;
>
> (c) Providing necessary water, light, heating and sewerage facilities for school buildings, and purchasing land therefore.

***Id.*** at 414 (internal quotation marks omitted). The Court noted that "no plans and specifications were required to be adopted prior to the issuance and sale of the bonds." ***Id.*** at 415 (citing ***In re Savannah Special Consol. Sch. Dist. of Pearl River Cnty.***, 208 Miss. 460, 44 So. 2d 545 (1950); ***Tedder***, 59 So. 2d at 329). Without any further analysis on this issue, the Court found this notice had been sufficient. ***Id.*** at 480.

***v. Dempsey***, 437 So. 2d 410, 417 (Miss. 1983)).

25

¶55. Floyd contends that the notice in *Greene County School District* fully identified the purpose for borrowing money and specifically described the proposed projects. This Court disagrees and finds the notice in *Greene County School District* is as sparsely worded as Floyd claims the notice is in this case. While the notice in *Greene County School District* specifically lists areas in which the school board desired to spend the bond money, it is a mirror image of the statutory language. *Id.* at 414. The notice in *Greene County School District* follows the language of Mississippi Code Section 37-59-3,[8] just as the language in the Board's June 10 resolution tracks the language of Section 37-7-355. Although the *Greene County School District* notice provided the maximum amount that would financed, this detail is required for bond validation. *See* Miss. Code Ann. § 37-59-11 (Rev. 2023) ("Before any money shall be borrowed under the provisions of this chapter, the school board of the school district shall adopt a resolution . . . specifying the approximate amount to be so

---

[8]Mississippi Code Section 37-59-3 (Rev. 2023) allows a school district to issue bonds for the purpose of

(a) Purchasing, erecting, repairing, equipping, remodeling and enlarging school buildings and related facilities, including gymnasiums, auditoriums, lunch rooms, vocational training buildings, libraries, teachers' homes, school barns, transportation vehicles and garages for transportation vehicles, and purchasing land therefor.

(b) Establishing and equipping school athletic fields and necessary facilities connected therewith, and purchasing land therefor.

(c) Providing necessary water, light, heating, air conditioning and sewerage facilities for school buildings, and purchasing land therefor.

26

borrowed[.]"). There is no similar requirement under the E.S.L.A. ***Greene County School District*** supports a finding that notice which merely tracks the statutory language is sufficient notice.

¶56. Floyd contends that, similar to ***Greene County School District***, the notice in ***Tedder*** "contained each piece of information that the more explicit school bond statute demanded." *See **Tedder***, 59 So. 2d at 332. The Court in ***Tedder*** did not include the language of the resolution it was evaluating, but it found that it was not "necessary for the resolution to set forth in detail the plans, specifications, and costs of the proposed improvements to the school plant." ***Id.*** The Court found that the resolution complied with the relevant statutory requirements. ***Id. Tedder*** is not applicable.

¶57. This Court finds that whether the statutory requirements for the notice are sufficient is not at issue. "[T]he courts are without the right to substitute their judgment for that of the Legislature as to the wisdom and policy of the act and must enforce it, unless it appears beyond all reasonable doubt to violate the Constitution." ***5K Farms, Inc. v. Miss. Dept' of Revenue***, 94 So. 3d 221, 227 (Miss 2012) (alteration in original) (internal quotation marks omitted) (quoting ***Pathfinder Coach Div. of Superior Coach Corp. v. Cottrell***, 216 Miss. 358, 362, 62 So. 2d 383, 385 (1953)). Instead, this Court considers whether the Board's notice satisfied the statutory requirements. This Court finds that the notice published by the Board met the statutory requirements of the E.S.L.A.

        B.     *Due Process under the E.S.L.A.*

¶58. Floyd also contends that the E.S.L.A.'s notice requirements violate the Due Process Clause under the Fourteenth Amendment of the United States Constitution and Article 3, Section 14, of the Mississippi Constitution. Floyd presents his due process argument as a challenge to the E.S.L.A. on procedural due process grounds. It is Floyd's opinion that property owners and owners of motor vehicles in Simpson County are entitled to reasonably calculated notice on issues that could impact their ad valorem taxes.

¶59. The chancellor noted that he was concerned that the notice requirements under the E.S.L.A. failed to afford the "taxpayers their rights of due process as to the school district's plan to incur more than $27,000,000 in debt." In reliance on the state bond attorney's opinion recommending validation, the chancellor nevertheless resolved this issue in favor of the Board.

¶60. "The Due Process Clause of the Fourteenth Amendment provides: 'No State shall . . . deprive any person of life, liberty, or property without due process of law . . . .'" *Knight v. Woodfield*, 50 So. 3d 995, 999 (Miss. 2011) (alterations in original) (quoting U.S. Const. amend. XIV). This Court generally regards the due process guarantees under Article III, Section 14, of the Mississippi Constitution as "essentially identical to the federal guarantee" under the Fourteenth Amendment. *White v. Gautier Util. Dist. of Jackson Cnty. (In re Validation of $7,800,00 Combined Util. Sys. Revenue Bond)*, 465 So. 2d 1003, 1011 (Miss. 1985) (citing *Miss. Power Co. v. Goudy*, 459 So. 2d 257, 261 (Miss. 1984)). Procedural due process claims trigger a two-step analysis: "(1) does the plaintiff have a property interest entitled to procedural due process protection; and (2) if yes, what process is due?" *Nelson*

28

*v. City of Horn Lake ex rel. Bd. of Alderman*, 968 So. 2d 938, 944 (Miss. 2007) (internal quotation marks omitted) (quoting *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 985 (Miss. 2004)).

¶61.    In *White*, a bond validation case, this Court addressed "whether citizens have due process rights to be heard—and, if so, where and to what extent—before their property may become burdened by the obligation to underwrite revenue bonds issued by a local political subdivision." *White*, 465 So. 2d at 1008.  The Court found that "there is no due process right that vests in any citizen with respect to a legislative act.  Such rights to appear and be heard as provided by statute are all that there are." *Id.* at 1021.

¶62.    This Court addressed this argument in *Cox*, in which the appellants argued that the E.S.L.A. "violates due process guarantees in the Fifth and Fourteenth Amendments to the United States Constitution and Section 14 of the Mississippi Constitution of 1890, because it does not provide for adequate notice." *Cox*, 503 So. 2d at 267.  Although the Court resolved the case on the fact that the objectors failed to timely raise their challenges at the validation hearing, this Court, in reliance on *White*, noted that "there is no due process right on a similar question, i.e., bond issue." *Id.* at 268 (citing *White*, 465 So. 2d at 1011).  Floyd contends that this statement from *Cox*, applying *White*'s finding to a due process claim under the E.S.L.A., is dicta.  Regardless of whether the statement is dicta or not, it is correct.

¶63.    Floyd argues that despite the Court's statement in *Cox* and the Court's holding in *White*, this Court should impose more robust notice requirements.  Floyd contends that the Board will be able to increase its budget annually to fund this project and that the county

board of supervisors will have to comply with the school's request to fund their budget, which will in turn raise the taxes. *See **Clarke Cnty. v. Quitman Sch. Dist.***, 378 So. 3d 353, 358 (Miss. 2024) (discussion of the county board of supervisors' ability to adjust the levy of ad valorem taxes to compensate for school district's budget). Floyd states that because of this rise in taxes, elderly or disabled homeowners will be forced to sell their homesteads or take out a reverse mortgage.[9]

¶64. Floyd distinguishes the Court's holding in **White** by arguing that no notice was required in that case but that notice is required under the E.S.L.A. Also, in **White**, the plaintiffs sought "access to a judicial forum to thwart" the public improvement and to challenge the "desirability or feasibility of the project[.]" **White**, 465 So. 2d at 1003, 1008, 1020. Floyd contends that the purpose of this objection, unlike that in **White**, is to seek "an actual meaningful opportunity to have thirty days to attempt to gather enough signatures on a petition to require the school board to hold a referendum on the proposal."

¶65. We find that the holding in **White** is persuasive. Floyd claims that the alleged due process violations harm the ad valorem taxpayers of Simpson County who will be obligated to repay the loan. His contentions center on the idea that the Board will raise taxes to fund the project. **White** directly addresses a challenge to validation of debt on the argument that the potential for increased ad valorem taxes would offend due process. **White**, 465 So. 2d at 1018. The Court stated:

---

[9]This argument is disingenuous. Homeowners who have reached sixty-five years of age or who are disabled are, by statute, granted special exemptions from ad valorem taxes. Miss. Code Ann. § 27-33-67 (Rev. 2024); *see* Miss. Code Ann. § 27-33-75(2)(a) (Rev. 2024).

> where the method of taking is ad valorem taxation levied generally and equally on all property in an entire taxing district, a property owner's due process rights are thought satisfied when he is afforded a reasonable procedure for challenging the accuracy and equity of the valuation of his property and the computation of his tax. So long as the taxing district acts within the authorities conferred by the legislature—including legislatively imposed limitations upon the millage rate—and *so long as the taxpayer is afforded his day in court on the question of validation*, **In re Savannah Special Consolidated School District**, 208 Miss. 460, 471-472, 44 So. 2d 545, 548 (1950), *such rights as the due process clause confers upon the taxpayer have been afforded him*.

*Id.* (emphasis added). The Court reiterated that "there is no due process right that vests in any citizen with respect to a legislative act. Such rights to appear and be heard as are provided by statute are all that there are." *Id.* at 1021.

¶66. Floyd has been afforded due process. First, as stated in *White*, Floyd is afforded these validation proceedings during which he is allowed to bring a broad scope of issues. *Id.* at 1018; 1012 ("scope of the hearing must be sufficiently broad to consider all questions that need to be resolved before the bonds are sold"). Second, Floyd was afforded notice and the opportunity to challenge and be heard as provided by the legislature in the E.S.L.A. The Board met the notice requirements of the E.S.L.A. by publishing their resolution in the newspaper of general circulation not less than thirty days before final action on the project was to be taken. § 37-7-355(1). The resolution was adopted on June 10, the first publication occurred on June 17 and final action was taken on July 19. The Board exceeded the publication requirement of Section 37-7-355(2) by publishing its resolution four times instead of the statutorily required three. As discussed, the notice included the statutory

31

requirements. The chancellor did not err by finding that the Board's action accorded Floyd adequate due process as required by the E.S.L.A.

### III. Whether the Board has authority to create a nonprofit corporation.

¶67. The Board created a nonprofit corporation to aid in the financing of the project. The corporation is controlled and run by the Board members. The chancellor found no statute prohibited the creation of the corporation by the Board and that the Board had broad statutory authority "under various enabling statutes." Accordingly, the chancellor ruled that the Board could create the corporation.

¶68. Floyd contends that the Board has no authority to create a corporation. He argues that the Board must be granted specific authority to create a corporation and that he has found no statute that would authorize such action. Floyd relies on Mississippi Code Section 37-7-301.1 which states in regard to the powers of school districts that

> [u]nless such actions are specifically authorized by another statute or law of the State of Mississippi, this section shall not authorize a school board to: (a) levy taxes of any kind or increase the levy of any authorized tax; *(b) issue bonds of any kind*; or (c) enter into collective bargaining agreements.

Miss. Code Ann. § 37-7-301.1 (Rev. 2019) (emphasis added). Section 37-7-301.1 is referred to by the parties as the "home rule" statute.

¶69. Floyd contends that, based on the home rule statute, because the Board's actions under the lease/leaseback arrangement are in the nature of issuing a bond, the Board needs specific authority to create a corporation. Floyd points out that, similar to a bond, the Board has to pay interest on the trust certificates, the leases (just like a bond) are for twenty-year terms without renewal, the state bond attorney characterized the lease as a general obligation, the

32

District purchased bond insurance and the Board is undergoing the same validation procedures as a bond issue. Floyd contends that neither the E.S.L.A, the home rule statute nor the other debt issuing statutes for school boards authorize the creation of a corporation. *See* Miss. Code Ann. § 37-59-1 to -45 (Rev. 2023); Miss. Code Ann. § 37-59-101 to -105 (Rev. 2023).

¶70. The Board argues that the creation of the corporation was not the issuing of bonds, so the limitation in the last sentence of the home rule statute is inapplicable. Regardless, the Board contends that the Mississippi Non-Profit Corporation Act, Mississippi Code Sections 79-11-101 to -407 (Rev. 2024), provides specific authority for the Board to create a corporation. As a governmental subdivision, the Board contends that it qualifies as an entity, and entities can create non-profit corporations.

¶71. We find that the chancellor did not abuse his discretion by finding that the Board could create a corporation. Mississippi Code Section 79-11-135 (Rev. 2024) of the Mississippi Non-Profit Corporation Act states that "[o]ne or more persons may act as the incorporator or incorporators of a corporation by delivering articles of incorporation to the Secretary of State for filing." Mississippi Code Section 79-11-127(bb) (Rev. 2024) (internal quotation marks omitted) defines "Person" to include "any individual or entity." An "Entity" is defined to include the "state, United States and foreign government." Mississippi Code Section 79-11-127(q) (Rev. 2024) (internal quotation marks omitted). "'State,' when referring to a part of the United States, includes a state and commonwealth (and their agencies and governmental subdivisions)[.]" Mississippi Code Section 79-11-127(jj) (Rev.

33

2024).   Mississippi Code Section 79-11-127(t) (Rev. 2024) (internal quotation marks omitted) defines "Governmental subdivision" to include "county, district and municipality." This means the Board as a governmental subdivision of the State is an entity, and entities can create corporations under the Mississippi Non-Profit Corporation Act.  *See **Gressett ex rel. Gressett v. Newton Separate Mun. Sch. Dist.***, 697 So. 2d 444, 446 (Miss. 1997) (finding that a school district constitutes a political subdivision of the state).  The chancellor's ruling is affirmed.

### IV.    Whether the E.S.L.A. is still applicable.

¶72.    The E.S.L.A. was enacted in the 1986 regular session to grant "an alternative method of providing for school facilities through multi-year leasing authority[.]" ***Cox***, 503 So. 2d at 266.  The E.S.L.A. states that

> [t]he Legislature finds and declares that there exists an urgent shortage of adequate public school facilities, equipment and capital with which to provide such facilities and equipment for the attainment of a satisfactory level of public education in the schools of this state, and that this situation has become a critical priority of many school districts in order to provide adequate space for kindergarten programs as mandated by the Education Reform Act of 1982. It is the purpose of Sections 37-7-351 through 37-7-359 to provide the board of trustees of the school district of this state with additional options with which to provide for facilities, equipment and other property necessary, in the judgment of the boards of trustees of such school districts, to properly carry out the local educational needs of the local school districts.

Miss. Code Ann. § 37-7-353 (Rev. 2019). The Education Reform Act of 1982 referenced in Section 37-7-353 "mandated that school districts provide kindergarten facilities by the Fall of 1986."  ***Cox***, 503 So. 2d at 266.

¶73. The last amendment to the E.S.L.A. was to Section 37-7-359 in 1995. Since its creation, this Court has only evaluated the E.S.L.A. once, in *Cox*, although there are a handful of attorney general opinions discussing its application. *See* Miss. Att'y Gen. Op. No. 2014-00202, 2014 WL 3572783, *Greenlee*, at *4 (June 6, 2014) (opining that Section 37-7-355 could be used to finance laptops and tablet computers); Miss. Att'y Gen. Op., No. 2008-00104, 2008 WL 965681, *Dick*, at *1 (Mar. 14, 2008); Miss. Att'y Gen. Op., No 2006-00226, 2006 WL 2789805, *Walker*, at *2 (July 11, 2006); Miss. Att'y Gen. Op., No 1999-0282, 1999 WL 529121, *Zachary*, at *2-3 (June 18, 1999); Miss. Att'y Gen. Op., No. 96-0790, 1996 WL 744741, *Lee*, at *1 (Dec. 13, 1996).[10]

¶74. Floyd argues that the Board should be prohibited from using the E.S.L.A. to finance its project. Floyd contends that the act was created for the kindergarten emergency which is no longer an ongoing issue. It is Floyd's contention that the Act was not already repealed by the legislature because (1) the legislature is reliant on Mississippi courts to prohibit misuse of the statutory scheme for nonemergencies, (2) repealing the statutes would cause investors to become insecure about their investments in projects funded through the E.S.L.A and (3) the legislature trusts schools not to misuse the broad provisions of the E.S.L.A. These arguments are without merit or authority.

¶75. The chancellor found that the legislature's use of the term "emergency" in the title of the act "does not limit use of this financing method when the remainder of the chapter

---

[10]"While attorney general opinions are not binding on Mississippi courts, they can be persuasive authority for consideration by our courts." **Ball v. Mayor & Bd. of Aldermen of City of Natchez**, 983 So. 2d 295, 306 (Miss. 2008) (quoting **DuPree v. Carroll**, 967 So. 2d 27, 31 (Miss. 2007)).

includes no such limitation within the other sections." The chancellor found convincing that the school districts throughout the state continue to finance under this scheme but that the legislature has not made any changes or repealed the act since 1995. Accordingly, the chancellor ruled in favor of the Board

¶76. The chancellor's ruling is affirmed. The mere use of the word emergency in the title of the act does not create such a limitation on all sections throughout the chapter. "Where the body of the statute is free from ambiguity, the meaning expressed therein must be given effect without resort to the title. The title cannot add to or extend the operation of the act." *Giles v. Friendly Fin. Co. of Biloxi*, 185 So. 2d 659, 662 (Miss. 1966) (citing *Bd. of Trs. of Kingston Consol. Sch. Dist. v. Forman*, 233 Miss. 42, 101 So. 2d 105 (1958)). Further, headings and titles generally "cannot limit the plain meaning of the text." *Id.* (quoting *Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528-29, 67 S. Ct. 1387, 1392, 91 L. Ed. 1646, 1652 (1946)).

¶77. Floyd contends that the legislature intended for the E.S.L.A. to be temporary. He states that because Section 37-7-355 exempts school boards from competitive bidding, unlike any other school funding mechanism, it must be temporary. Additionally, Floyd argues that the E.S.L.A. exempted school districts from the limits that would be placed on similar leases under Mississippi Code Section 37-7-301(v)(i) (Rev. 2019). Section 37-7-301(v)(i) provides for a similar lease/lease-purchase arrangement as the E.S.L.A. but contains additional

requirements.[11]  Floyd contends that the E.S.L.A. contains exemptions to other statutes, so the legislature could not have intended for it to be permanent.

¶78.   Floyd's argument fails to prove that the legislature intended the E.S.L.A. to be temporary.  More importantly, Floyd fails to persuade this Court that there is any reason to declare the E.S.L.A extinct.  We agree with the attorney general's recommendation to the chancellor that the court should "freely rule on applying the law as it is to the facts that are before it without reaching the constitutionality, without reaching the issue of whether the law itself is extinct."

¶79.   The E.S.L.A. does not require the Board to declare an emergency or use the E.S.L.A. to only build kindergartens.  As stated in Section 37-7-353 the purpose of the E.S.L.A. is "to provide the boards of trustees of the school district of this state with additional options with which to provide for facilities, equipment and other property necessary . . . to properly carry out the local educational needs of the local school districts." The Board presented evidence of the disrepair and insufficiency of the Simpson County school buildings and facilities.  Further, the Board declared its need in the June 10 publication.

¶80.   Floyd's contentions are aimed at a dislike for the general terms of the E.S.L.A.  While we have noted that the E.S.L.A. appears to be an end around for school bond requirements,[12]

---

[11]Section 37-7-301(v)(i) requires that the "total cost of such lease shall be either the amount of the lowest and best bid accepted by the school board after advertisement for bids or an amount not to exceed the current fair market value of the lease . . . ."

[12]This Court noted as much in *Cox*, when it stated in a footnote that the reason for the E.S.L.A. was obvious when considering that the Jackson Municipal Separate School District had a debt capacity of $200 million and a bonded indebtedness of less than $10 million, and it had been unable to pass a bond issue for twenty-two years.  *Cox*, 503 So. 2d at 266 n.1.

"[t]he propriety, wisdom and expediency of (an) act is a question for the Legislature and not the courts." *Anderson ex rel. Anderson v. Fred Wagner & Ray Anderson, Jr., Inc.*, 402 So. 2d 320, 321 (Miss. 1981) (second alteration in original) (internal quotation mark omitted) (quoting *Miss. State Tax Comm'n v. Tenn. Gas Transmission Co.*, 239 Miss. 191, 116 So. 2d 550, 552(1959)). This Court assumes "that the Legislature considered the effect of the statute and that it acted with an intent to comply with constitutional provisions and a desire to be fair and equitable." *Id.* (quoting *Tenn. Gas Transmission Co.*, 116 So. 2d at 552).

## CONCLUSION

¶81.    The chancellor's finding in favor of validation is affirmed. The Board properly amended it minutes to include the June 10 resolution, and the Board properly gave notice under the statutory requirements. Under the Mississippi Non-Profit Corporation Act, the District could create a corporation, and the Board could use the procedure set forth in the E.S.L.A. as its statutory funding mechanism. Floyd's arguments are without merit.[13]

¶82.    **AFFIRMED.**

    **RANDOLPH, C.J., KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM AND ISHEE, JJ., CONCUR. GRIFFIS, J., NOT PARTICIPATING.**

---

[13]Floyd's unopposed Motion for Leave to File Corrected Reply Brief is granted.